**SEGUROS BANVENEZ, S.A., and C.V.G. Electrificacion Del Caroni C.A., Plaintiffs,**

v.

**S/S OLIVER DRESCHER, her engines, boilers, tackle, etc., Compania Anonima Venezolana De Navegacion, Containership Erich Drescher K.G., Erich Drescher, Containerline Joachim Drescher, Reederei Joachim Drescher, Hansen & Tidemann, Inc., Defendants.**

No. 82 CIV. 7822 (CBM).

United States District Court, S.D. New York.

March 12, 1984.

**174**

Harold M. Kingsley, New York City, for plaintiffs.

Giallorenzi & Campbell by Renato Giallorenzi, Michael T. Moore, New York City, for Compania Anonima Venezolana de Navigacion.

Haight, Gardner, Poor & Havens by Elizabeth McCandless, Chester D. Hooper, New York City, for M/V Oliver Drescher, Containership Erich Drescher K.G., Erich Drescher, Containerline Erich Drescher, and Reederei Joachim Drescher.

Halley & Chalos by Albert Avallone, James R. Halley, Jr., New York City, for Hansen & Tidemann, Inc.

## OPINION

MOTLEY, Chief Judge.

Plaintiffs Seguros Banvenez (Seguros) and C.V.G. Electrificacion del Caroni (Edelca) have brought a motion for summary judgment against defendants S/S OLIVER DRESCHER, her engines, boilers, tackle, etc. (Drescher), Compania Anonima Venezolana de Navegacion (Venline), Containership Erich Drescher K.G. (Drescher), Containerline Joachim Drescher (Drescher), Reederei Joachim Drescher (Drescher), and Hansen & Tidemann, Inc. (Hansen & Tidemann). In addition, plaintiffs seek an award of punitive damages because they allege that defendants' conduct was wantonly and willfully fraudulent. Plaintiffs also have made a motion to dismiss Venline's counterclaim as frivolous. Defendants, in turn, have made a variety of motions. Venline has made a motion for partial summary judgment to limit plaintiffs' damages, if any, to $500.00. In addition, Venline has made a motion to stay the dispute between Venline and Drescher pending arbitration proceedings. Drescher has made a cross-motion for summary judgment against Venline. Hansen & Tidemann has made a motion for summary judgment against plaintiffs.

For the reasons set forth below, plaintiffs' motion for summary judgment against all the defendants on the issue of liability is granted. Their claim for punitive damages, however, is denied. Venline's counterclaim against plaintiffs is dismissed as frivolous, and Venline's motion to stay the proceedings is denied. Ven-

line's motion for partial summary judgment also is denied. Motions for summary judgment by Drescher as well as Hansen & Tidemann are denied.

FACTS

Edelca, A Venezuelan company, purchased five construction cranes which were to be shipped aboard the S/S OLIVER DRESCHER from Baltimore, Maryland to Matanzas, Venezuela. Seguros was the insurance carrier for Edelca. Venline served as the charterer for the S/S OLIVER DRESCHER. Hansen & Tideman served as an agent for Venline, by supplying blank Bill of Lading forms to all parties and by preparing the stowage plans for the shipment of these five cranes. Captain Alvarez, an employee of Venline, approved the stowage plans submitted by Hansen & Tidemann.

Despite the fact that the Bills of Lading and dock receipts specified underdeck stowage of the cranes, all five were stowed above deck on the ship. Moreover, the Bills of Lading specified a voyage departing from Baltimore and arriving in Matanzas. Sometime after the cranes were loaded, it was decided that the S/S OLIVER DRESCHER would make a geographical deviation to Searsport, Maine in order to load additional cargo.

While the ship was headed towards Maine, it encountered a severe storm, and the cranes were washed overboard. Plaintiffs claim damages in the amount of $1,196,354.11, plus interest, costs, attorneys' fees, and punitive damages. Seguros and Edelca allege that both the geographical and on-deck deviations were unreasonable; therefore, defendants are liable to plaintiffs as insurers. Plaintiffs further contend that defendants' actions constitute willful and wanton fraud, thus entitling plaintiffs to an award of punitive damages.

Venline contends that stowing the cranes on-deck was not an unreasonable deviation in light of the circumstances. That is, defendant suggests that custom or usage between the carrier and shipper may justify stowing cargo on-deck despite specific instructions to the contrary on the Bills of Lading and Dock Receipts.

DISCUSSION

In an opinion issued shortly after the passage of the Carriage of Goods by Sea Act of 1936, 46 U.S.C. § 1300–1315 (1976) (COGSA) this Court held that on-deck stowage constituted an unreasonable deviation when underdeck stowage was specified in the Bill of Lading. *Jones v. The Flying Clipper*, 116 F.Supp. 386, 389 (S.D.N.Y. 1953). Judge Weinfeld reasoned that:

> A shipper has the right to assume that the carrier will not deviate and thereby subject the cargo to other than the known risks inherent in a normal route or underdeck stowage. The shipper protects himself by insurance commensurate with such calculated risks. But when the carrier deviates and enters upon "a different venture from that contemplated," he exposes the cargo to unanticipated and additional risks against which he has not protected himself. The shipper, in effect, has been lulled into a false sense of security by the carrier's actions.
>
> ❖ ❖ * ❖ * *
>
> .... Deck stowage where underdeck stowage is required is more than negligence—it is a deviation with resulting abrogation of the contract.

*Id.* at 389 (footnotes omitted).

Judge Weinfeld's analysis was upheld by the Second Circuit in *Encyclopaedia Britannica v. S.S. Hong Kong Producer*, 422 F.2d 7, 18 (2d Cir.1969), when the court rejected a shipowner's contention that habit constitutes a valid custom. In the absence of the shipowner's proof that a stowage deviation constituted a valid custom, the Second Circuit held that:

> In consequence the bill of lading must be treated as a clean bill importing below deck stowage. The stowing of the six containers on the weather deck was, therefore, an unreasonable deviation.

*Id.* at 18.

Thus, the court rejects Venline's contention that the on-deck stowage of the cranes was "customary" throughout the industry.

Therefore, on-deck stowage in the instant case constituted an unreasonable deviation.

Defendants concede that the deviation northward of approximately four hundred miles was for the sole purpose of loading additional cargo. Section 4(4) of COGSA provides that:

Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: *Provided, however*, That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable.

46 U.S.C. § 1304(4).

▄▄▄ This court concludes that the sole reason for the deviation northward in winter was to take on additional cargo. In so doing, defendants increased the risk of unfavorable weather conditions. Defendants acted without any forewarning to plaintiffs. By permitting an unreasonable geographical deviation, defendants thus breached their contract with plaintiffs in violation of section 4(4) of COGSA. *General Electric Co. International Sales Div. v. S.S. Nancy Lykes*, 706 F.2d 80, 81–86 (2d Cir.1983); *Du Pont de Nemours International S.A. v. S.S. Mormacvega*, 493 F.2d 97, 101 (2d Cir.1974).

Venline contends that even if defendants engaged in an unreasonable deviation in violation of 46 U.S.C. § 1304(4), its liability is limited to $500.00 per package under the terms of 46 U.S.C. § 1304(5). Section 4(5) of COGSA provides that:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

There is no dispute that, prior to COGSA's enactment, any unreasonable deviation deprived a carrier of all liability limitations on the ground that such deviation voids the contract between the parties and made the carrier fully liable for the cargo as an insurer. 706 F.2d at 86–87 (citing *The Willdomino v. Citro Chemical Co.*, 272 U.S. 718, 725, 47 S.Ct. 261, 262, 71 L.Ed. 491 (1927). Subsequent to the enactment of COGSA, Judge Weinfeld held that the same reasoning should be applied to post-COGSA cases; that is, unreasonable geographical and/or stowage deviations abrogate the contract and exclude a carrier from the liability limiting provisions of Section 4(5) of COGSA. *Jones v. The Flying Clipper*, 116 F.Supp. at 388–89. In *Du Pont de Nemours International*, the Second Circuit concurred that "any ... unreasonable deviation from the contract of carriage will deprive the carrier of this statutory limitation of liability." 493 F.2d at 100 n. 9. As noted in *General Electric Co. International, supra*, there are strong policy reasons for enforcing section 4(5) of COGSA in this manner:

Indeed, exposing carriers which engage in unreasonable deviations to the risk of full liability has the salutary effect of discouraging such deviations. On the other hand, to allow carriers to limit their liability when an unreasonable deviation causes damage to cargo not only would weaken the carrier's primary duty of care to cargo under § 3(2) of COGSA, 46 U.S.C. § 1303(2) (1976), but would render meaningless the § 4(4) distinction between reasonable and unreasonable deviations. *See Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807, 815 (2d Cir.1981). Such a result is not warranted. *See id.* ("In interpreting § 4(5), courts must ... take a critical look at any proposed construction ... that would reduce a carrier's liability below reasonable limits.").

706 F.2d at 87.

Consequently, this Court holds that defendants' decision to sail northward in winter to Searsport without publishing a notice to affected shippers constituted an unreasonable geographical deviation and further holds that defendants abrogated their con-

tract with plaintiffs and became liable as insurers for the cargo's full value.

Plaintiffs contend that defendants' disregard of the "mandatory underdeck stowage" instructions on the dock receipts constitutes "the grossest negligence and the most reckless disregard for contractual rights and legal duties imaginable." Plaintiff's Memorandum of Law in Support of their Motion for Summary Judgment, at 5. Thus, plaintiffs believe that they are entitled to a substantial award of punitive damages.

■ Plaintiffs misunderstand the requirements of this Circuit for awarding punitive damages. In *In the Matter of the Vessel MARINE SULPHUR QUEEN*, the Second Circuit held that "[a] condition precedent to awarding them is a showing by the plaintiffs that the defendant was guilty of gross negligence, or actual malice or criminal indifference which is the equivalent of reckless and wanton misconduct." 460 F.2d 89, 105 (2d Cir.1972). Plaintiffs in the instant case have failed to present sufficient evidence to support a finding of these elements; therefore, plaintiffs' request for punitive damages in its motion for summary judgment is denied.

■ Plaintiffs further allege that they are entitled to attorneys' fees because defendants have acted in bad faith by continuing an indefensible action. *Nemeroff v. Abelson*, 704 F.2d 652, 660 (2d Cir.1983). Plaintiffs have failed to prove, however, that all defenses are clearly lacking in merit; therefore, they have not met their burden of proving bad faith. Plaintiffs cannot prevail on the issue of punitive damages. Thus, plaintiffs' demand for attorneys' fees is denied.

■ Plaintiffs have made a motion for summary judgment against all defendants. A motion for summary judgment pursuant to Fed.R.Civ.P. 56 may be granted when there is no genuine material factual issue that is in dispute. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4 at 9 (2d Cir.1983). This court concludes that no substantial issue of fact is in dispute on the

issue of liability as between plaintiffs and defendants and as to the punitive damages and attorneys' fees. The issue of the amount of damages remains to be determined on a trial. The liability of the individual defendants also remains to be apportioned. Therefore, plaintiffs' motion for summary judgment is granted in part and denied in part.

■ Defendant Venline has made a motion to stay proceedings between defendant Drescher and Venline pending arbitration in London. Pursuant to 9 U.S.C. § 3 (1947), a federal court has discretionary power to control all proceedings in order to achieve an efficient and fair disposition of a case. *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441–42 (2d Cir.1964) (citing *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). A party seeking to stay proceedings pending arbitration bears the burden of proving that the stay will not hinder arbitration and that the delay will not work an unfair hardship on the opposing party. *Id.* at 442. *See also, Katz v. Shearson Hayden Stone, Inc.*, 438 F.Supp. 637, 642 (S.D.N.Y.1977).

■ This court concludes that Venline has failed to meet its burden under 9 U.S.C. § 3; that is, defendant has not overcome the other parties' contentions that arbitration would delay the resolution of this case and would prove far more costly since all parties would have to begin to submit evidence again in London.

■ Moreover, this court holds that Venline has waived its right to proceed through arbitration by actively participating in the present litigation. Although Venline reserved its right to arbitration in its answer to Drescher's cross-claim, Venline's motion for summary judgment constitutes a waiver of the right to arbitration. *See Katz v. Shearson Hayden Stone, Inc.*, 438 F.Supp. 637, 641 (S.D.N.Y.1977). Thus, this court holds that Venline's motion to stay proceedings is denied.

Venline appealed this court's imposition of a security in lieu of arrest or to release the vessel from arrest. The Second Circuit dismissed Venline's appeal from this court's imposition of such a security in its opinion of August 11, 1983. *Seguros Banvenez S.A. and C.V.G. Electrificacion Del Caroni C.A. v. S/S OLIVER DRESCHER v. Compania Anonima Venezolana de Navegacion*, 715 F.2d 54 at 56 (2d Cir. 1983).

◼ Venline now counterclaims that plaintiffs' refusal to accept a letter of guarantee from a Venezuelan underwriter is unreasonable. Local Rule 37(b) provides that:

Except as otherwise provided by law, every bond, undertaking or stipulation must be secured by the deposit of cash or government bonds in the amount of the bond, undertaking or stipulation, or the undertaking or guaranty of a corporate surety holding a certificate of authority from the Secretary of the Treasury, or the undertaking or guaranty of two individual residents of the [Southern District of New York], each of whom owns real or personal property within the district worth double the amount of the bond, undertaking or stipulation, over all his other debts and liabilities, and over all obligations assumed by said surety on other bonds, undertakings, or stipulations, and exclusive of all legal exemptions.

Venline's proposed guarantee fails to meet the requirements of Rule 37(b). Thus, this court concludes that Venline's counterclaim is without merit and must be dismissed.

◼ Drescher has made a motion for summary judgment, contending that the charterer, Venline, is liable for plaintiffs' losses as a matter of law. Section 183 of the Limitation of Vessel Owner's Liability Act provides that exoneration will result only if there is no fault on the part of the vessel owner. 46 U.S.C. § 183 (1976); *See In re Complaint of DELPHINUS MARITIMA, S.A.*, 523 F.Supp. 583, 592–93 (S.D. N.Y.1981). If there is fault, but the owner sustains its burden of proving lack of privi-

ty and knowledge, recovery is limited to the value of the vessel and its pending freight. *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1155 (2d Cir.1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979); *In the Matter of the Complaint of DELPHINUS MARITIMA, S.A.*, 523 F.Supp. at 592.

◼ A determination of fault requires an inquiry into whether Drescher exercised due diligence in making sure that the vessel was seaworthy. Section 192 of the Limitation of Shipowners Act provides that if the owner exercises due diligence to make the vessel seaworthy in all respects, then neither the owner nor its agents nor its charterers shall become or be held responsible for damages or loss resulting from negligence in navigation or in the management of the vessel or dangers of the sea or from deviations while attempting to save life or property at sea. 46 U.S.C. § 192 (1976). Section 3(1)(a) of COGSA imposes on a carrier the duty to exercise due diligence to make a vessel seaworthy. 46 U.S.C. § 1303(1)(a) (1976). "Seaworthiness" has been defined to include (1) manning of a ship with an adequate crew, *Tug Ocean Prince, Inc. v. United States*, 584 F.2d at 1155–56; (2) proper stowage of all goods carried, *Freedman & Slater, Inc. v. M.V. Tofevo*, 222 F.Supp. 964 (S.D.N.Y. 1963); and (3) proper navigational practices, *see Tug Ocean Prince, Inc. v. United States*, 584 F.2d at 1155–56.

Although the charterer, Venline, and its subagent, Hansen & Tidemann, actually prepared the stowage plans, the Drescher's crew saw that the cranes were stowed improperly on-deck. Since Drescher thus had knowledge of the vessel's unseaworthy condition, Drescher cannot be exonerated at this point. The owner's liability cannot be limited under 46 U.S.C. § 183 because Drescher had a duty to see that the ship was seaworthy in all respects. 584 F.2d at 1155. Since Drescher had knowledge of the ship's unseaworthiness through its agents Venline and perhaps indirectly through the Drescher's crew, Drescher's

motion for summary judgment must be denied.

Drescher alleges that if it is liable at all, it is entitled to indemnification from Venline. Drescher and Venline entered into a Time Charter Party on July 1, 1980, which governs the rights, duties, and liabilities of the parties. Clause 8 of the charter provides that:

> The Captain (although appointed by Owners) shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision and responsibility of the Captain, who if requested to do so by Charterers, their Agents or Supercargo, is to sign Bills of Lading for cargo and presented, in conformity with Mate's or Tally Clerk's receipts.

Based on this clause, Drescher contends that any knowledge taken by its Captain and crew are irrelevant since they acted under the orders of the charterer and thus they became agents of the charterer.

The clause in issue is very similar to Clause 8 of the New York Produce Exchange form charter party. The form charter has been interpreted to place full responsibility for stowage on the charterer so long as the stowage plan is not based on the vessel's stability. *Nichimen Company, Inc. v. M.V. Farland,* 462 F.2d 319 (2d Cir.1972). As Judge Friendly noted:

> The charterer's prime responsibility for loading and stowage is not destroyed by the qualification that this shall be "under the supervision of the Captain," a phrase doubtless intended to make plain the master's right to veto a plan that might imperil the seaworthiness of the vessel ... not to impose on him a duty, as the owner's agent, to supervise the charterer's stow. Had the stowage in this case been properly designed by the charterer's agent, no damage would have occurred. The primary negligence was of the charterer's agent, and we can discern

no valid reason why the charterer should now be allowed to shift the cargo damage to the owner on the theory that the captain, on behalf of the owner, should have corrected its improper stowage. Rather, under clause 8, the safety of the stowage, insofar as cargo damage is concerned, generally is the primary responsibility of the charterer.

> \* \* \* \* \* \* .

> Under clause 8, though, the Captain is under the "orders and directions of the Charterers as regards employment and agency." ... [W]e think the owner's liability for cargo damage due to improper stowage is limited to instances in which the Captain intervenes in the stowage process to protect the vessel's safety and ability to withstand the perils of the sea; to the extent that he acts merely to protect the cargo, the charterer is responsible.

462 F.2d at 332–33 (footnotes omitted).

■ The evidence submitted by both Drescher and Venline establishes that the Captain did not order the cranes to be stowed on-deck and that the vessel's stability was not a factor in the decision to stow the cranes. Rather, the cranes were placed on-deck to make room for stowing newsprint paper cargo below deck. Alvarez Deposition at 48–50. Even if the officers of Drescher had participated in stowing the cranes on-deck, Drescher still would not be liable. When officers act pursuant to cargo interests, they act as the charterer's agents. *International Produce, Inc. v. Frances Salman,* 1975 Am.Mar.Cases 1521, 1544–45 (S.D.N.Y.1975).

■ Thus, this court concludes that Drescher is entitled to indemnification for all damages resulting from the charterer's improper performance. This indemnification includes any liability for attorneys' fees. *Nichimen Company, Inc. v. M.V. Farland,* 462 F.2d at 333. The charterer, however, is entitled to indemnification from the owner only for damages paid by char-

terer but not attributable to the charterer's negligence. *In re Complaint of DELPHINUS MARITIMA, S.A.*, 523 F.Supp. at 598.

Hansen & Tidemann is a Texas corporation hired by Venline to prepare the stowage plans for shipping the cranes in issue. As Venline's agent, Hansen & Tidemann also supplied blank Bill of Lading forms to the parties. Hansen & Tidemann contends that under general agency law, it should be relieved of any liability since it acted with the approval of its principal at all times. *Restatement (2d) of Agency*, §§ 4, 144 (1958). Captain Alvarez, Venline's traffic and operations manager, reviewed all the stowage plans submitted by Hansen & Tidemann. Stockard Shipping, Venline's port agent in Baltimore, provided Hansen & Tidemann with all information about the plaintiffs' cargo. In addition, Hansen & Tidemann did not fill in the Bills of Lading, alter the ship's itinerary, or enter into any contractual relationship with plaintiffs without disclosing that it was Venline's agent.

 There is a considerable body of case law to support the notion that disclosed principals are liable for the actions of their agents. *See Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 808 (2d Cir.1971). Nonetheless, agents in a cargo damage case still may be liable to cargo claimants or their principals if their own negligence, if any, is found to be a concurrent, proximate cause of the damage. *Fernandez v. Chios Shipping Company*, 542 F.2d 145, 152–53 (2d Cir.1976); *In re Complaint of DELPHINUS MARITIMA*, 523 F.Supp. at 597–98. Since the questions of whether Hansen & Tidemann was negligent in its preparation of the stowage plans or acted solely within the scope of its agency are issues of fact to be resolved at trial, Hansen & Tidemann's motion for summary judgment must be denied at this time. *S.E.C. v. Research Automation Corporation*, 585 F.2d 31, 33 (2d Cir.1978); *FLLI Moretti Cereali S.p.A. v. Continental Grain Co.*, 563 F.2d 563, 565 (2d Cir.1977).