761 F.2d 855
 1985 A.M.C. 2168
 SEGUROS BANVENEZ, S.A., and C.V.G. Electrificacion Del
Caroni C.A. (Edelca), Plaintiffs-Appellees, Cross-Appellants,
v.
S/S OLIVER DRESCHER, her engines, boilers, tackle, etc.,
Containership Erich Drescher K.G., Erich Drescher,
Containerline Joachim Drescher, Reederei
Joachim Drescher, Defendants-Appellees,
Hansen & Tidemann, Inc., Defendant-Appellee, Cross-Appellant,
Compania Anonima Venezolana De Navegacion,
Defendant-Appellant, Cross-Appellee.
 Cal. Nos. 440, 521 and 522, Docket 84-7580, 84-7594 and 84-7596.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 29, 1984.
Decided April 30, 1985.
 
 Vincent J. Barra, New York City (Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, of counsel), for defendant-appellant, cross-appellee Compania Anonima Venezolana de Navegacion.
 Albert J. Avallone, New York City (Halley & Chalos, and James R. Halley, Jr., New York City, of counsel), for defendant-appellee, cross-appellant Hansen & Tidemann, Inc.
 Harold M. Kingsley, New York City, for plaintiffs-appellees, cross-appellants Seguros Banvenez S.A., and C.V.G. Electrificacion del Caroni C.A. (EDELCA).
 Elizabeth T. McCandless, New York City (Haight, Gardner, Poor & Havens, and Chester D. Hooper, New York City, of counsel), for defendants-appellees S/S Oliver Drescher and Containerline Joachim Drescher.
 Before VAN GRAAFEILAND, KEARSE, and PIERCE, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This case comes to us on an appeal and cross-appeals from a judgment of the United States District Court for the Southern District of New York in an admiralty action for loss of cargo. The district court (Motley, C.J.) held all the defendants liable for the loss but granted indemnification in favor of the charterer's general agent and the vessel owner against the charterer. As part of its appeal from the final judgment, the charterer seeks reversal of interim orders denying its application for a partial stay pending arbitration and compelling it to post security in order that the vessel might be released from arrest.
 
 
 2
 C.V.G. Electrificacion del Caroni C.A. (Edelca) and Seguros Banvenez S.A. (Seguros), its cargo underwriter, brought this action on November 24, 1982, seeking damages for the loss at sea of five large mobile cranes. Named as defendants were the ship, the S/S OLIVER DRESCHER, its owner, Containerline Joachim Drescher and related entities (Drescher), the charterer, Compania Anonima Venezolana de Navegacion (Venline), and Venline's general agent, Hansen & Tidemann, Inc. (Hansen).
 
 
 3
 Edelca, a Venezuelan corporation, purchased the cranes in November of 1981 from Grove Manufacturing Company. Grove delivered the cranes to the Port of Baltimore from where they were to be carried by Venline to Matanzas, Venezuela. Pursuant to a stowage plan prepared by Hansen and approved by Venline, Stockard Shipping & Terminal Corporation (Stockard), Venline's port agent at Baltimore, supervised the stowage of the cranes aboard ship. Although dock receipts for the cranes bore the legend "MANDATORY UNDERDECK STOWAGE BOOKED AND REQUIRED", and clean bills of lading were issued, the cranes were stowed on deck.
 
 
 4
 After leaving Baltimore, the ship made scheduled calls at Philadelphia and New York. However, instead of then heading for Venezuela, it set sail for Searsport, Maine, an unscheduled stop, in order to receive a cargo of newsprint. En route, the vessel encountered severe weather, and the cranes were washed overboard. This suit followed, plaintiffs alleging that the defendants had committed both stowage and geographical deviations. Cross-claims were interposed between Venline and Drescher and between Venline and Hansen.
 
 
 5
 Shortly after the complaint was filed, the S/S OLIVER DRESCHER was arrested in Brooklyn, New York. It was released after the district court, at the request of the vessel's owner, ordered Venline to furnish the owner with sufficient security so that the owner in turn could post the bond necessary for such release. Venline counterclaimed against the plaintiffs and cross-claimed against Drescher for damages sustained as a result of this allegedly improper order.
 
 
 6
 On March 12, 1984, the district court granted the plaintiffs' motion for summary judgment against all defendants on the issue of liability, finding that the defendants had committed unreasonable deviations by stowing the cranes on deck and by sailing for Searsport, but denied that portion of the motion which sought punitive damages and attorney's fees. 587 F.Supp. 172, 175-77. The court also denied Venline's motion to stay the proceedings between itself and Drescher pending arbitration, dismissed Venline's counterclaim, and denied Drescher's and Hansen's motions for summary judgment against the plaintiffs, id. at 177-80.
 
 
 7
 Thereafter, in a pretrial order dated May 22, 1984, the district court granted Drescher's claim for indemnification and attorney's fees against Venline and dismissed Venline's cross-claim against Drescher. Following a two-day trial on the issues which in the opinion of the district court remained to be decided, the court found that Stockard was the agent of Venline, granted Hansen's cross-claim against Venline for indemnification, and dismissed Venline's cross-claim against Hansen. It also determined plaintiffs' damages to be $1,800,000. Judgment for that amount with interest and costs was entered on June 4, 1984.
 
 
 8
 Venline now appeals from the judgment and the adverse interim rulings, including the district court's order requiring it to post security for the release of the S/S OLIVER DRESCHER, which we earlier held to be nonappealable for lack of finality, 715 F.2d 54 (2d Cir.1983). Hansen cross-appeals, contending that the district court erred in granting summary judgment against it and in not awarding it attorney's fees against Venline. Hansen also joins Venline in challenging the amount of the damage award. Seguros and Edelca cross-appeal as well, arguing that the district court should have awarded them punitive damages and attorney's fees. We affirm in part, vacate in part, and reverse in part.
 
 I. The Summary Judgment Ruling
 
 9
 As this Court recently noted, "[t]he law governing summary judgments is too well settled to require elaboration. Succinctly stated, it authorizes the summary disposition of litigation if, but only if, there are no genuine issues of material fact to be tried." Granite Computer Leasing v. Travelers Indemnity Co., 751 F.2d 543, 545 (2d Cir.1984) (citing Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244-45 (2d Cir.1984)). It also is well established that, when ruling on a motion for summary judgment, a court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought". Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317, 1320 (2d Cir.1975).
 
 
 10
 Our examination of the summary judgment motion papers satisfies us that the district court disregarded these rules by granting summary judgment against all of the defendants on the issue of liability. However, only Venline and Hansen challenge this ruling on appeal. The attorneys for the ship and its owner, having received the benefit of a completely favorable ruling on their cross-claim, concede that the district court's decision was correct. Confining our review to the grant of summary judgment against Venline and Hansen, we hold first that, insofar as Venline is concerned, summary judgment was proper.
 
 
 11
 Venline does not dispute the rule, first enunciated by Judge Weinfeld in Jones v. The Flying Clipper, 116 F.Supp. 386 (S.D.N.Y.1953), that on-deck stowage when stowage below deck is required constitutes an unreasonable deviation under the Carriage of Goods by Sea Act, 46 U.S.C. Secs. 1300-1315 (COGSA). Neither does it deny that, absent an agreement or an established custom from which consent of the shipper for on-deck stowage may be imputed, a clean bill of lading imports stowage below deck. Du Pont de Nemours International S.A. v. S.S. Mormacvega, 493 F.2d 97, 100-01 (2d Cir.1974); Encyclopaedia Britannica, Inc. v. SS Hong Kong Producer, 422 F.2d 7, 15 (2d Cir.1969), cert. denied, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970). Instead, Venline contends that on-deck stowage was both the custom with heavy cargo destined for Orinoco River ports and the specific request of Edelca. These contentions were properly rejected.
 
 
 12
 The vague and conclusory references in Venline's affidavits to a preferred method of on-deck discharge of cargo at certain locations on the Orinoco River were insufficient to create a factual issue concerning a prevailing custom for on-deck stowage at the Port of Baltimore. See Encyclopaedia Britannica, supra, 422 F.2d at 17-18; Fed.R.Civ.P. 56(e). In the instant case, the usual import of the clean bill of lading is supported both by specific language in the dock receipts and the requirement of clean bills of lading in the letters of credit issued in connection with the purchase of the cranes. Venline did not indicate at any time that it was prepared to prove a specific request by Edelca for on-deck stowage.
 
 
 13
 Turning to the issue of geographical deviation, Venline does not attack the district court's finding that "the sole reason for the deviation northward in winter was to take on additional cargo." 587 F.Supp. at 176. What Venline does argue is that the voyage to Searsport did not constitute a deviation at all because, Venline says, Searsport was an advertised customary port.
 
 
 14
 Again, Venline has failed to meet the requirements of Rule 56(e). The affidavits which Venline submitted do not furnish any factual support for its contention that, in 1981, Searsport, Maine was a scheduled port for Venline vessels destined for Orinoco River ports. Advertisements which list only New York, Philadelphia, and Baltimore, and add, "other ports by inducement", do not indicate a route that is "established and by all means published to the world." General Elec. Co. Intern. v. S.S. Nancy Lykes, 706 F.2d 80, 85 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).
 
 
 15
 We conclude, therefore, that the district court ruled correctly on the issues of both geographical and stowage deviation. Its grant of summary judgment against Venline on this issue must be affirmed.
 
 
 16
 The situation with regard to Hansen is completely different. The district court held that Hansen, which was under contract with Venline, served as Venline's agent in supplying blank bill of lading forms to all parties and in preparing the stowage plans for the cranes. 587 F.Supp. at 175. When an agent makes a contract for a disclosed principal, it becomes neither a party to the contract nor liable for the performance of the contract. Restatement (2d) of Agency Secs. 320, 328. Accordingly, it is not liable if the contract is breached. Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 808 (2d Cir.1971).
 
 
 17
 Although an agent might be held liable if it acted outside the scope of its agency, 3 C.J.S. Agency Sec. 362, or negligently, id. Sec. 379; Restatement (2d) of Agency Sec. 343, the district court held that, whether Hansen was negligent in its preparation of the stowage plans or acted solely within the scope of its agency, were "issues of fact to be resolved at trial." 587 F.Supp. at 180. In view of these holdings, summary judgment on the issue of liability should not have been granted against Hansen.
 
 
 18
 Since the portion of the district court's order that granted summary judgment against Hansen must be vacated, it follows that the portion which granted Hansen indemnity over against Venline also must be vacated. Resolution of that issue should not have taken place in the face of the erroneous grant of summary judgment.
 
 
 19
 Because plaintiffs have secured a judgment against Venline and Drescher which now has been affirmed, it seems unlikely that plaintiffs will pursue their claim against Hansen. If they do and the issue of Hansen's negligence is litigated, Venline should be given an opportunity to litigate fully its claim over against Hansen, an opportunity it has not yet had. It will not be necessary to retry the issue whether Stockard, the company which actually loaded the cranes, was Hansen's subagent, a question which the district court correctly answered in the negative.
 
 II. The Awards
 
 20
 Venline contends that plaintiffs' recovery should be limited to their "actual damages" of $1,196,354.11, which, Venline asserts, is the amount Edelca paid for the lost cranes. The correct measure of damages, however, is the amount necessary to put the injured parties in the exact position they would have been in had there been no breach. Wallace Steel, Inc. v. Ingersoll-Rand Co., 739 F.2d 112, 115 (2d Cir.1984); Perma Research & Development v. Singer Co., 542 F.2d 111, 116 (2d Cir.), cert. denied, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976). In loss of cargo cases, this generally means the market value of the goods at the time and place they were to have been delivered. Empresa Central Mer. de R. v. Republic of U.S. of Brazil, 257 F.2d 747 (2d Cir.1958); Gilmore & Black, The Law of Admiralty 182 (1975). This was the measure of damages that the district court adopted. The district court's computation therefore was a factual determination which this Court should not disturb unless it was clearly erroneous. Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308, 312 (2d Cir.1964). It was not.
 
 
 21
 Venline next contends that, since Seguros paid Edelca 3,551,942 Bolivars and was subrogated to Edelca's rights with regard to four of the cranes, only Seguros is a proper plaintiff, and its recovery must be limited to what it paid. Although Venline is correct in asserting that an insurer's recovery on a subrogated claim may not exceed the amount paid under the policy, 16 Couch on Insurance 2d Secs. 61:39, 61:46 (1983); Gilmore & Black, supra, Sec. 2-17 n. 143, it does not follow that Seguros is the only real party in interest. If an insurer has paid only part of the insured's loss, the insured is entitled to recover the residue, and, hence, is also a proper plaintiff. Mitsui & Co. v. American Export Lines, 636 F.2d 807, 823-24 (2d Cir.1981); Rohner, Gehrig & Co. v. Capital City Bank, 655 F.2d 571, 579 (5th Cir.1981).
 
 
 22
 Venline's final argument on this issue also is based on the insurance payment by Seguros. Venline contends that since Seguros' claim is based on an obligation payable in Venezuela and in Bolivars, the "judgment day rule" applies, and the amount to which Seguros is entitled, 3,551,942 Bolivars, should be converted into United States dollars at the exchange rate prevailing at the date of the decree. Shaw, Savill, Albion & Co. v. The Fredericksburg, 189 F.2d 952, 955 (2d Cir.1951). Alternatively, relying on Jamaica Nutrition Holdings v. United Shipping Co., 643 F.2d 376 (5th Cir.1981), Venline argues that Seguros' recovery should be converted as of March 15, 1983, the date Seguros paid Edelca's claim.
 
 
 23
 As stated above, the amount paid by an insurer under an insurance policy acts as a limit on the insurer's recovery. Nevertheless, the underlying claim is still that of the insured. Mitsui, supra, 636 F.2d at 823-24; see also P.T. Perusahaan Pelay. Sam. Trikora L. v. T.S. Salzachtal, 373 F.Supp. 267, 274 n. 3 (E.D.N.Y.1974). Because the loss in the instant case occurred on the open seas and plaintiffs' cause of action was governed by United States law, so that there was no need to convert a recovery in foreign currency into American dollars, the district court correctly rejected the judgment day rule. See Jamaica Nutrition, supra, 643 F.2d at 380-81; see also Conte v. Flota Mercante Del Estado, 277 F.2d 664, 670-71 (2d Cir.1960).
 
 
 24
 Not satisfied with what appears to be a very generous award, plaintiffs contend that they also should have been awarded punitive damages. Applying the standard of In re Marine Sulphur Queen, 460 F.2d 89, 105 (2d Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 326, 34 L.Ed.2d 246 (1972), the district court found that the defendants were not "guilty of gross negligence, or actual malice or criminal indifference which is the equivalent of recklessness and wanton misconduct." We see no reason to disturb that finding. As was noted in Marine Sulphur Queen, the district court's decision whether to award punitive damages is discretionary. Id.; see also Complaint of Merry Shipping, Inc., 650 F.2d 622, 626 (5th Cir.1981). There was no abuse of discretion here.
 
 
 25
 Plaintiffs' request for attorney's fees also was properly denied in view of their failure to prove that the defendants acted in bad faith in defending the action. Demsey & Associates, Inc. v. S.S. Sea Star, 500 F.2d 409, 411 (2d Cir.1974); Gradmann & Holler GMBH v. Continental Lines, 679 F.2d 272, 273-74 (1st Cir.1982).
 
 
 26
 Although it does not appear that Hansen requested the district court to award it legal fees, it now argues, citing cases such as David Crystal, Inc. v. Cunard Steam-Ship Co., 339 F.2d 295, 300 (2d Cir.1964), cert. denied, 380 U.S. 976, 85 S.Ct. 1340, 14 L.Ed.2d 271 (1965), that it is entitled to them. Because the awarding of attorney's fees is a discretionary function of the district court and because Hansen, as of now, does not have the status of a successful indemnitee, we are not prepared to direct the making of an award.
 
 III. Venline's Motion for a Stay
 
 27
 Paragraph 17 of the charter party between Drescher and Venline bound both parties to submit any dispute arising between them to arbitration in London. Although Venline took the necessary steps to institute the arbitration process, the district court denied its motion to stay that portion of the litigation aimed at resolving its dispute with Drescher. This was error.
 
 
 28
 In denying Venline's motion, the district court stated that "[p]ursuant to 9 U.S.C. Sec. 3 (1947), a federal court has discretionary power to control all proceedings in order to achieve an efficient and fair disposition of a case." 587 F.Supp. at 177. The court also stated that the party seeking a stay pending arbitration bears the burden of showing that a stay would not work a hardship on the opposing party. Id. Finding that Venline had failed to meet that burden, the district court denied its motion. It also held that, because Venline had moved for summary judgment, it had "waived its right to proceed through arbitration by actively participating in the present litigation." Id.
 
 
 29
 It is evident that the district court has misconstrued its role under section 3 of the Federal Arbitration Act. Contrary to the court's view, that section does not grant a court plenary discretion over the proceedings. Rather, "in passing upon a Sec. 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." Prima Paint v. Flood & Conklin, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); see also Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983). The court may not refuse to grant a stay under section 3 based on considerations of judicial economy. Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 644-46 (7th Cir.1981).
 
 
 30
 Although a party may waive its right to arbitration by inconsistent resort to litigation, Demsey & Associates v. S.S. Sea Star, 461 F.2d 1009, 1017-18 (2d Cir.1972), such a waiver "is not to be lightly inferred", Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457, 461 (2d Cir.1985) (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968)). The district court erred in finding a waiver in this case. Drescher has failed to demonstrate the kind of prejudice necessary to support such a finding. Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., supra, 754 F.2d at 463-64. Although Venline participated in the litigation, it asserted the right to arbitrate at the very outset when it filed its answer to the amended complaint and cross-claim. Moreover, since Venline could not prevent plaintiffs from proceeding with their claims, it had no choice but to participate. Waiver may not be inferred on the basis of conduct relating to non-arbitrable issues. Dickinson v. Heinold Securities, Inc., supra, 661 F.2d at 642.
 
 
 31
 Because Venline was entitled to a stay pending resolution of the London arbitration, the decision of the district court granting Drescher indemnification and attorney's fees against Venline and dismissing Venline's cross-claim against Drescher must be vacated.
 
 IV. The Security Order
 
 32
 When the S/S OLIVER DRESCHER was arrested on December 28, 1982, the district court ordered Venline to provide sufficient security to the vessel's owner, Drescher, so that Drescher, in turn, could post security to secure the vessel's release. In passing upon the question whether this was an appealable order, 715 F.2d 54, we gave some consideration to whether it arguably constituted an abuse of conceded authority or an exercise of power which the district court did not possess. Id. at 56-57. We found it unnecessary to resolve that issue because we concluded that, in either event, the order was not appealable. Id. Because the matter is now properly before us on an appeal from a final judgment, see Shore v. Parklane Hosiery Co., 606 F.2d 354, 357 (2d Cir.1979); Allied Air Freight, Inc. v. Pan American World Airways, Inc., 393 F.2d 441, 444-45 (2d Cir.), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968), we need no longer be so concerned about the niceties of legal terminology.
 
 
 33
 Under traditional doctrines of maritime law, a vessel such as the S/S OLIVER DRESCHER may be held liable for its torts and contracts even though its owner may not. Merchants National Bank v. Dredge General G.L. Gillespie, 663 F.2d 1338, 1345 (5th Cir.1981), cert. dismissed, 456 U.S. 966, 102 S.Ct. 2263, 72 L.Ed.2d 865 (1982). The lien arising from such wrongs creates an interest in the vessel, which is treated as a legal entity for this purpose. In rem actions against ships are authorized by Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. The procedures governing attachment and release of vessels are set out in Rule E and 28 U.S.C. Sec. 2464. Nowhere in the Rules or statute is there any provision compelling the owner to furnish a bond. J.K. Welding Co. v. Gotham Marine Corporation, 47 F.2d 332, 334 (S.D.N.Y.1931). More significantly for purposes of our decision on this appeal, nowhere in the Rules or statute is there any provision for an order requiring a charterer to furnish security to the owner.
 
 
 34
 This Court has not been in the vanguard of those which would concede the existence of broad equitable jurisdiction in an admiralty court. See Eddie Steamship Co. v. P.T. Karana Line, 739 F.2d 37, 38-39 (2d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 568, 83 L.Ed.2d 508 (1984). Moreover, even where equity jurisdiction exists, it generally is recognized that the equitable remedial powers of the court are not unlimited. Sixty-seventh Minnesota State Senate v. Beens, 406 U.S. 187, 199, 92 S.Ct. 1477, 1485, 32 L.Ed.2d 1 (1972) (per curiam). "A court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law, or even without the authority of law." Rees v. City of Watertown, 86 U.S. 107, 122, 22 L.Ed. 72 (1874). "It cannot assume control over ... imperfect obligations, resting upon conscience and moral duty only, unconnected with legal obligations." Id. at 121. An equitable doctrine must of necessity "comport to and remain compatible with the prevailing legislative intent." In re Fulghum Construction Corp., 706 F.2d 171, 173 (6th Cir.) (quoting In re Bell, 700 F.2d 1053, 1057 (6th Cir.1983)), cert. denied, --- U.S. ----, 104 S.Ct. 342, 343, 78 L.Ed.2d 310 (1983). "The plain mandate of the law cannot be set aside because of considerations which may appeal to referee or judge as falling within general principles of equity jurisprudence." United States v. Killoren, 119 F.2d 364, 366 (8th Cir.1941) (quoting Southern Bell Telephone & Telegraph Co. v. Caldwell, 67 F.2d 802, 803 (8th Cir.1933)). Finally, a court's equity powers may not be exercised in such a manner as to deprive a person of constitutionally or statutorily protected rights. Carter v. Gallagher, 452 F.2d 315, 324 (8th Cir.1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); United States v. Haddix & Sons, Inc., 415 F.2d 584, 588 (6th Cir.1969).
 
 
 35
 Venline did not ask to be brought into court, and it did not concede liability over to Drescher. Indeed, that issue remains to be decided in arbitration. A shipowner is not compelled to furnish a bond to the person who has arrested its ship. Its quid pro quo for voluntarily furnishing security is the release of its ship. Depriving Venline of its property by compelling it to furnish a bond to Drescher without any similar quid pro quo, without any valid prior finding as to the parties' respective rights, and without any provision for protection of Venline's interests and expenses, smacks of a violation of due process. We conclude that the granting of Drescher's application for security from Venline was error.
 
 V. Conclusion
 
 36
 The district court did not err in granting summary judgment against Venline and in setting damages at $1,800,000 plus interest. It did not err in refusing to grant punitive damages and attorney's fees. Accordingly, these rulings are affirmed.
 
 
 37
 We vacate plaintiffs' judgment against Hansen, Hansen's judgment over against Venline and the dismissal of Venline's cross-claim against Hansen and remand for further proceedings. We also vacate Drescher's judgment and award of attorney's fees against Venline and the dismissal of Venline's cross-claim against Drescher. The district court is instructed to stay further proceedings as between Drescher and Venline pursuant to 9 U.S.C. Sec. 3 pending timely arbitration between the parties. Finally, we reverse the district court's order of December 30, 1982, requiring Venline to furnish security and direct that the security furnished by Venline pursuant to that order be cancelled and returned intact to Venline.
 
 
 38
 So ordered.