PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 25 2000
THOMAS K. KAHN
CLERK

_____

No. 98-6223

_____

D. C. Docket No. 98-00070-CV-P-C

VENUS LINES AGENCY,

Plaintiff-Appellant,

versus

CVG INDUSTRIA VENEZOLANA DE ALUMINIO, C.A.,

Defendant-Appellee.

* * * *

_____

No. 98-6562

_____

D. C. Docket No. 98-00070-CV-P-C

VENUS LINES AGENCY,

Plaintiff-Appellee,

versus

CVG INDUSTRIA VENEZOLANA DE ALUMINIO, C.A.,

_____

Appeals from the United States District Court
for the Southern District of Alabama
_____
**(April 25, 2000)**

Before BLACK and WILSON, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

These consolidated appeals arise from a United States steamship cargo company's attachment of cargo belonging to a Venezuelan corporation to secure any award the cargo company might receive in pending arbitration proceedings. The district court vacated the attachment previously entered by a magistrate judge, on the ground that the property was immune from attachment under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"). On this issue, we reverse and remand. We affirm, however, the district court's order granting a stay and providing for a release bond.

In February 1995, Venus Lines Agency ("Venus Lines"), a shipping company, contracted with CVG Industria Venezolana de Aluminio, C.A. ("Venalum"), a corporation that produces aluminum products, for Venus Lines to deliver Venalum's monthly shipments of aluminum products from Venezuela to Mobile, Alabama and

Veracruz, Mexico. In late 1996, Venus Lines commenced arbitration against Venalum, claiming that Venalum owed it more than $4,000,000 for a number of charges due under the contract.

In early January 1998, Venus Lines' vessel arrived in Mobile, Alabama and offloaded the aluminum intended for delivery to Venalum's customers there (the "Mobile cargo"). Rather than proceeding to Veracruz, Mexico, the delivery point for the remaining aluminum (the "Mexico cargo"), Venus Lines filed a motion for a writ of foreign attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure seeking attachment of the Mexico cargo.

A magistrate judge issued the writ of attachment. Venalum filed a motion to vacate the attachment, which was granted by the district court on March 4, 1998. Thereafter, pursuant to motions by Venus Lines and Venalum, the court issued a series of orders providing for a stay of execution of the March 4 judgment pending appeal and the posting of bonds by Venalum and Venus Lines in the amounts of $4,200,000 and $286,000, respectively.

In appeal no. 98-6562, Venus Lines appeals the district court's March 4 order vacating the writ of foreign attachment. In appeal no. 98-6223, Venalum contests the

3

district court's order granting a stay and requiring Venalum to post bond.  We address

Venus Lines' appeal first.

## I.  Writ of foreign attachment (Appeal No. 98-6562)

The FSIA grants immunity to a foreign state's property in the United States

from attachment, arrest and execution except as provided in specific provisions of the

Act.  *See* 28 U.S.C. § 1609, which states in pertinent part:

> [T]he property in the United States of a foreign state shall be immune
> from attachment, arrest and execution except as provided in sections
> 1610 and 1611 of this chapter.

The issue is whether the exception to immunity in section 1610(d) regarding

prejudgment attachment applies in this case.  Section 1610(d) states:

> The property of a foreign state ... used for a commercial activity in the
> United States, shall not be immune from attachment prior to entry of
> judgment in any action brought in a court of the United States ... if --
> (1)The foreign state has explicitly waived its immunity from
> attachment prior to  judgment ..., and
> (2) The purpose of the attachment is to secure satisfaction of a
> judgment that has been or may ultimately be entered against the
> foreign state, and not to obtain jurisdiction.

28 U.S.C. § 1610(d).  The parties do not dispute that Venalum is considered a "foreign

state" under the FSIA, because it is majority-owned by an agency or instrumentality

of the Venezuelan government.  *See* 28 U.S.C. § 1603(a).  Therefore, the exception

will apply if (i) Venalum explicitly waived its immunity from prejudgment

attachment; (ii) the purpose of the attachment was to obtain security, not jurisdiction;

4

and (iii) the attached aluminum was used for a commercial activity in the United States. *See* § 1610(d). The district court's conclusion as to whether Venalum enjoys sovereign immunity under the FSIA is a question of law we review *de novo*. *See Aquamar, S.A. v. Del Monte Fresh Produce*, 179 F.3d 1279,1289-90 (11th Cir. 1999).

### A. Whether Venalum explicitly waived its immunity from prejudgment attachment.

A waiver of immunity from prejudgment attachment must be explicit. *See* 28 U.S.C. § 1610(d)(1). To determine whether Venalum explicitly waived immunity, we look to the pertinent language of the contract of affreightment, which states:

**CLAUSE O8 – ATTACHMENT**

THE SHIPOWNERS [Venus Lines] shall have the right to attach the cargo for the payment of the freight, dead freight, demurrages and losses due to detention. THE CHARTERERS [Venalum] shall be responsible for the dead freight and demurrages which may have been caused at the port of lading.

THE CHARTERERS shall also be responsible for the demurrages which may have been caused at the port of discharge or unloading.

 The issue is whether the clear reference to Venus Lines' right to "attach" the cargo is a sufficiently explicit waiver of immunity from prejudgment attachment. (Though the original contract was in Spanish, the parties agree that the word "embarger" is properly translated as attachment).  Although no court has addressed

5

this precise issue, the Second Circuit has rejected the contention that the words "prejudgment attachment" must be recited to effect a waiver. *See Libra Bank, Ltd. v. Banco Nacional de Costa Rica,* S.A., 676 F.2d 47, 49-50 (2d Cir. 1982). In *Libra Bank,* the defendant issued four promissory notes, each "irrevocably and unconditionally waiv[ing] any right or immunity from legal proceedings including suit judgment and execution on grounds of sovereignty." *Libra Bank,* 676 F.2d at 49. The requirement of an "explicit" waiver, the court held, was intended by Congress to preclude only an "unintended waiver." Therefore, the language "any . . . immunity from legal proceedings" constituted an explicit waiver of immunity under section 1610(d)(1) because, although the words "prejudgment attachment" were not explicitly mentioned, the language demonstrated a "clear and unambiguous intent to waive all claims of immunity in all legal proceedings." *Libra Bank,* 676 F.2d at 49.

Similarly, the use of the term "attachment" in this case evinces the parties' "clear and unambiguous intent" to waive immunity from prejudgment attachment. *Libra Bank,* 676 F.2d at 49. Under a common sense reading, prejudgment attachment is wholly encompassed by the broader term "attachment." A simple reference to "attachment," therefore, explicitly covers both prejudgment and postjudgment attachment. There is no reason to believe that Venalum's waiver of prejudgment attachment was "unintended." *Libra,* 676 F.2d at 50. We determine that the district

6

court erred in holding that Venalum did not explicitly waive its immunity from prejudgment attachment.

Because the district court decided the case based on this issue, the court did not reach the other two prongs of section 1610(d). We address each prong in turn.

B.    **Whether the cargo was attached to obtain security.**

Under section 1610(d), the "purpose" of the prejudgment attachment must be to "secure satisfaction of a judgment . . . and not to obtain jurisdiction." Venalum argues that the attachment violates this requirement of section 1610(d) because, under Rule B, it confers on the district court jurisdiction over Venalum through its property. *See Nehring v. Steamship M/V Point Vail,* 901 F.2d 1044,1051 (11th Cir. 1990)(Rule B "cannot be used purely for the purpose of obtaining security: 'The two purposes may not be separated, however, for security cannot be obtained except as an adjunct to obtaining jurisdiction.'"), *quoting Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580,582 (2d Cir. 1963). Venalum misreads section 1610(d): so long as the *purpose* of the prejudgment attachment is to obtain security and not jurisdiction, it is irrelevant that an *effect* of the attachment is to obtain jurisdiction. *Compare Mangattu v. M/V IBN HAYYAN*, 35 F.3d 205,209(5th Cir. 1994)(Rule B attachment improper under section 1610(d) where "[t]he Motion for Issuance of Warrant of Arrest filed by

Appellants specifically sought to attach the vessel in order to subject UASC, a non-resident defendant, to personal jurisdiction.").

It is clear that the purpose of the attachment was to obtain security. Venus Lines' complaint expressly states that it "seeks to attach property of Defendant within the district to secure any arbitration award that [Venus Lines] might obtain." Furthermore, Venus Lines had no incentive to seek attachment merely to obtain jurisdiction. Jurisdiction over Venalum in the underlying action is not in dispute because in the contract of affreightment, Venalum consented to jurisdiction in a New York arbitration, which was in progress at the time of this appeal.

Because the purpose of the attachment was to obtain security, not jurisdiction, this condition for waiver of immunity under section 1610(d) was satisfied.

**C.    Whether Venalum's property was "used for a commercial activity in the United States."**

To satisfy the immunity exception under section 1610(d), the property must be "used for a commercial activity in the United States." The only property subject to the disputed attachment was the Mexico cargo, which remained on Venus Lines' ship docked in Mobile Bay awaiting its delivery by Venus Lines to Veracruz, Mexico. The mere presence of the property in the United States, however, is not enough to satisfy this condition for a waiver of sovereign immunity.

Venus Lines contends that there was in fact a commercial use of the property in the United States. According to the affidavit of Venus Lines' president, Michael Kobiakov, Venus Lines released the Mobile cargo only after Venalum agreed to allow Venus Lines to attach the Mexico cargo in its place. In effect, Venus claims that the Mexico cargo was used for the commercial activity of facilitating Venalum's sale of the Mobile cargo. If true, the Mexico cargo would indeed have been "used for a commercial activity in the United States." In a counter-affidavit, however, Venalum's vice-president and legal counsel, Gustavo N. Rondon Fragachan, denies that such an agreement was reached. The determination whether the commercial activity prong has been satisfied and the answer to the ultimate question whether Venalum's property is entitled to immunity under the FSIA are contingent upon resolution of this disputed issue. Accordingly, we remand this issue of fact to the district court.

## II.    Bond and Stay (Appeal No. 98-6223)[1]

Pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, the district court ordered the execution of its judgment stayed upon the posting of a supersedeas bond

---

[1]The court *sua sponte* raised the question whether it had jurisdiction over Venalum's appeal. Having reviewed the parties' briefs, the court is satisfied that Venalum adequately identified the orders from which it appeals in its notice of appeal, and the appeal is properly brought under the collateral order doctrine. *See Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.,* 339 U.S. 684,688-89 (1950)(28 U.S.C. § 1291 did not bar jurisdiction over appeal from order dissolving attachment: "Appellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible.").

by Venus Lines in the amount of $286,000 and ordered Venalum to post a bond in the amount of $4,200,000. Venalum challenges both the imposition of the stay pending appeal and the order requiring it to post bond.

## A. Stay

Rule 62(d) states:

> **(d) Stay Upon Appeal.** When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of the rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

In the case of a non-money judgment, whether a stay is warranted under Rule 62(d) depends upon:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*United States v. United States Fishing Vessel MAYLIN*, 130 F.R.D. 684,686 (S.D. Fla. 1990), *quoting Hilton v. Braunskill*, 481 U.S.770,776 (1987).

Although Venalum correctly observes that the district court did not quote the four-factor test in its opinion, the court did conduct a comparable inquiry in which it assessed the equities of imposing a stay. We find no error in the court's ordering of a stay under Rule 62(d).

## B. Bond

10

Venalum also argues that the court was without authority to require Venalum to post a bond to gain the release of the Mexico cargo. While the bond imposed on Venus Lines falls squarely within Rule 62(d), we agree that the district court erred in analyzing the bond required of Venalum as a "supersedeas bond" under that rule. By its plain language, Rule 62(d) only applies to appeal bonds, not to a release bond used as a substitute for attached property. Nevertheless, we affirm the district court's decision on other grounds. *See Watkins v. Bowden*, 105 F.3d 1344, 1354 n.17 (11th Cir. 1997) (appellate court may affirm district court on any ground, even one not considered).

The court's action was authorized by Rule (E)(5)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which provides in pertinent part that "whenever process of maritime attachment and garnishment . . . is issued the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk." Arguably, this provision is inapplicable because it only applies by its terms where "process of maritime attachment and garnishment . . . is *issued*." In this case, the district court *vacated*, rather than issued, the attachment. Nevertheless, we conclude that Rule (E)(5)(a) applies because the district court stayed its vacation of the writ of attachment,

11

meaning that the "process of maritime attachment and garnishment . . . issued" by the magistrate judge remained in effect.

Venalum argues the district court exceeded its authority under Rule E(5) by *compelling* Venalum to post bond, relying on *Seguros Banvanez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, (2d Cir. 1985), which is factually inapposite. In *Seguros*, the party that had to furnish the bond was not the shipowner, but the *charterer*. The *Seguros* court was concerned about making the charterer pay security when it did not get the quid pro quo of the release of the ship:

> [a] shipowner is not compelled to furnish a bond to the person who has arrested its ship. Its quid pro quo for voluntarily furnishing security is the release of its ship. Depriving [the charterer] of its property by compelling it to furnish a bond to [the owner] without any similar quid pro quo, without any valid prior finding as to the parties' respective rights, and without any provision for protection of [the charterer's] interests and expenses, smacks of a violation of due process.

*See Seguros,* 761 F.2d at 863-64.

In this case, it was not the ship, but the cargo that was attached. When Venalum posted bond, it got its quid pro quo -- the release of the Mexico cargo. Because the terms of Rule E(5)(a) were met, the district court was authorized to require Venalum to post bond to gain the release of the Mexico cargo pending appeal.

## III. Conclusion

Appeal no. 98-6223: We AFFIRM the district court's orders granting a stay and requiring Venalum to post a bond for release of the Mexico cargo.

Appeal no. 98-6562: We REVERSE the district court's order vacating the writ of foreign attachment and REMAND for further proceedings consistent with this opinion.