Louis GIRARD, et al.,
Plaintiffs-Appellees,

v.

DREXEL BURNHAM LAMBERT, INC.,
et al., Defendants-Appellants.

No. 86–2026.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1986.

Richard L. Josephson, Baker & Botts, Houston, Tex., for defendants-appellants.

David T. Maddox, Calvin, Dylewski, Gibbs, Maddox, Russell & Sharks, Scott L.

608

Franck, Houston, Tex., for plaintiffs-appellees.

Before GEE and HILL, Circuit Judges, and HUNTER *, District Judge.

ROBERT MADDEN HILL, Circuit Judge:

This case involves the much-litigated question of whether claims brought under the Securities Exchange Act of 1934 and the Racketeering Influenced and Corrupt Organizations Act (RICO) are arbitrable. The district court held that both types of claims were nonarbitrable. In addition, the district court refused to stay litigation pending the arbitration of state claims arising from the securities transactions involved in this case. On the appeal of these rulings, we find that a recent decision by another panel of this court dictates the result in this case. Accordingly, we affirm in part and reverse in part.

### I.

In 1984 plaintiffs Dr. Louis Girard, Stephanie Deman, Lourdes A. Haget, Rosemary Rao, and Edeltrand K. Lloyd filed a damage suit against defendants Drexel Burnham Lambert, Inc. (Drexel), Cliff Rosner, and George Stark as a result of the alleged improper handling of their accounts by the defendants.[1] The plaintiffs alleged causes of actions under the Securities Act of 1933 (the 1933 Act), the Securities Exchange Act of 1934 (the 1934 Act), the RICO statute, the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581-1 et seq. (1964 & Vernon Supp.1986), and the Texas Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Com.Code Ann.

§ 17.41 et seq. (Vernon Supp.1986). In addition, the plaintiffs asserted claims for common law fraud, breach of fiduciary duties, negligence, gross negligence, and willful and wanton misconduct in the handling of their accounts by the defendants.

Drexel and the other defendants claimed that the terms of their agreement with Girard and the other plaintiffs allowed them to arbitrate the plaintiffs' claims. Accordingly, they wrote to the plaintiffs, demanded arbitration, and requested that the plaintiffs make an election as to an arbitration panel. The plaintiffs refused to agree to arbitration. In response, the defendants moved to compel arbitration of all of the plaintiffs' claims except those related to the 1933 Act and, in addition, requested a stay of litigation of any nonarbitrable claims pending the outcome of arbitration. In a series of orders the district court ordered arbitration of the state law causes of action, ordered litigation of the 1933 Act, 1934 Act, and RICO claims, and refused to stay the litigation of the nonarbitrable claims pending the outcome of arbitration. The defendants appeal all aspects of the district court's ruling except that portion related to the 1933 Act claims.

### II.

The plaintiffs first contend that the arbitration clauses in their agreement with Drexel expressly exclude causes of action arising under all federal securities laws and, thus, the district court properly refused to compel arbitration of the 1934 Act and RICO claims. In connection with the opening of these accounts, the plaintiffs executed a "Client's Security Option Agreement." Paragraph 8 of this agreement provides that:

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. The improper handling of the accounts involves allegations that Drexel engaged in "churning" of their accounts. Churning basically involves the continuous switching of a customer's account from one investment to another by the broker for the primary purpose of making a profit for the broker by earning commissions for each transaction. The plaintiffs also allege, inter alia, that the defendants offered and sold securities to them by means of misrepresentations and omissions of material facts and that the defendants purchased certain investments that were not suitable for the plaintiffs in light of their stated investment goals.

Any controversy arising out of or relating to the account of the undersigned, to transactions with you for the undersigned, or to this agreement or to the breach thereof, shall be settled by arbitration.... Certain decisions by the federal courts have held that if a dispute involves a claim arising under the Securities Act of 1933 or the Securities Exchange Act of 1934, such arbitration clauses are void and unenforceable as applied to such claims and accordingly customers cannot be compelled to arbitrate such a claim. In other contexts, the courts generally enforce arbitration clauses in customer's agreements. Therefore, *nothing in this paragraph shall in any way constitute a waiver or limitation of any rights which the undersigned may have under any federal securities laws.*

(emphasis added).

Subsequently, the plaintiffs executed a second document entitled "Non-Employee Third Party Trading Authorization Limited to Purchases and Sales of Securities and Commodities" which contains the arbitration language relied upon by the defendants in their motion to compel arbitration. The arbitration clause in this document contains slightly different language than the other arbitration clause and provides that:

Subject to the last two sentences of this paragraph, any controversy arising out of or relating to this authorization, or the breach thereof, or any controversy relating to the account of the undersigned, shall be settled by arbitration.... The federal securities laws provide that such agreements may not bind persons to waive compliance with any provision of the federal securities laws. Therefore, *nothing in this paragraph shall in any way constitute a waiver or limitation of any rights which the undersigned may have under any federal securities laws.*

(emphasis added). The plaintiffs contend that the italicized portions of the arbitration clauses quoted above indicate that the

parties are not required to submit claims arising under any federal securities laws to arbitration.

■ We disagree with the plaintiffs. Their argument has been raised before and rejected in *Chandler v. Drexel Burnham Lambert, Inc.,* 633 F.Supp. 760 (N.D.Ga. 1985). In *Chandler* the court indicated that the words "may have" in the last sentence in the above clauses indicate that the plaintiff's rights under the federal securities laws are uncertain. The court found that the "may have" language was consistent with the previous two sentences of the arbitration clause and did not remove all disputes involving the federal securities laws from having to be arbitrated. In conclusion, the court found that while the plaintiff might have a right to a judicial forum for some claims under the federal securities laws because of judicial decisions, other claims involving the federal securities laws had to be arbitrated. The court noted that "to allow the plaintiff to adjudicate all federal securities claims would render the arbitration clause meaningless." *Id.* at 763.

Moreover, in *West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (W.D.Wash. 1985), the court also interpreted an arbitration clause similar to the one involved in this case as merely advising the plaintiff that he will be bound by the law and what it indicates regarding his rights. The court stated that the clause:

does not purport to do anything but state that the arbitration agreement is governed by federal securities law. Therefore, the quoted portions of the arbitration clause are irrelevant and this Court must look to and be bound by the federal securities laws regarding whether or not Plaintiff's claims are arbitrable pursuant to his agreement with Defendant.

*Id.* at 27.

*Hammerman v. Peacock,* 1985 Fed.Sec. L.Rep. ¶ 92,239 (D.D.C.1985) [Available on WESTLAW, DCTU database], heavily relied on by the plaintiffs, is distinguishable. In that case, the court considered together the effect of two agreements, a "Custom-

er's Agreement" and an "Option Agreement." The "Customer's Agreement" contained an arbitration clause similar to the one involved in this case. The "Option Agreement," however, provided explicitly that "[n]othing contained herein shall *require* the undersigned to submit to arbitration any claim that may validly exist under federal securities laws." *Id.* at p. 91,704. (emphasis added). *Hammerman* concerns a completely different clause explicitly prohibiting the forced arbitration of any federal securities claims and is much different than the "non-waiver of possible rights" language contained in the agreements involved in this case. Consequently, we hold that the arbitration agreement that the plaintiffs signed with Drexel applies to their 1934 Act and RICO claims.[2]

### III.

Since the arbitration clauses cover the dispute between the plaintiffs and the defendants, arbitration is required unless the federal securities laws preclude arbitration. We now turn to that issue.

### A.

In *Mayaja v. Bodkin*, 803 F.2d 157, 161 (5th Cir.1986), a panel of this court decided the very issues that are before us in this appeal. The *Mayaja* court reaffirmed our previous rulings that 1934 Act claims are nonarbitrable. *Mayaja*, 803 F.2d at 162 (citing cases). The *Mayaja* opinion also considered the question of whether private RICO claims may be arbitrated. After noting the conflict between other circuits on the issue, analyzing recent Supreme Court decisions dealing with arbitrability, and considering the legislative history of the RICO statute, the court adopted a position different from that adopted by other circuits and held that private RICO claims must be arbitrated under the Federal Arbitration Act. *Mayaja*, 803 F.2d at 162–66.

It is well settled that one panel of this court cannot disregard the precedent set by a prior panel even if it disagrees with the prior panel decision. Absent an overriding Supreme Court decision or a change in the statutory law, only the court sitting *en banc* can do this. *See, e.g., Ketchum v. Gulf Oil Corp.*, 798 F.2d 159, 162 (5th Cir.1986); *Adams-Lundy v. Association of Professional Flight Attendants*, 792 F.2d 1368, 1372 n. 4 (5th Cir.1986); *United States v. 8.41 Acres of Land*, 783 F.2d 1256, 1259–60 (5th Cir.1986); *Washington v. Watkins*, 655 F.2d 1346, 1354 n. 10 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). Consequently, we follow *Mayaja* and hold that the district court properly refused to compel arbitration of the 1934 Act claims but erroneously refused to compel arbitration of the RICO claims.[3]

### B.

Finally, Drexel alleges that the district court should have stayed litigation pending arbitration of the state claims. Drexel argues that the litigation of nonarbitrable claims should be stayed so that the results of the arbitration proceedings may be given collateral estoppel effect.

**2.** Drexel contends that the controlling arbitration agreement is the "Non-Employee Third Party Trading Authorization" and that the "Client's Security Option Agreement" is inapplicable. We need not decide that question because we believe the result is the same no matter which arbitration clause is considered applicable.

**3.** The Supreme Court has granted certiorari in a Second Circuit case involving similar issues. *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.), *cert. granted,* — U.S. —, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986). Subsequently, in a letter addressed to the court, Drexel implicitly suggests that we should stay our ruling until the Supreme Court has decided *McMahon.* We decline to do so. Just as the denial of a writ of certiorari carries with it no implication regarding the Court's view of the merits of the case, *see, e.g., Hughes Tool Co. v. Trans World Airlines*, 409 U.S. 363, 365 n. 1, 93 S.Ct. 647, 650 n. 1, 34 L.Ed.2d 577 (1973), the granting of a writ of certiorari, by itself, carries with it no indication of how, or even if, the Court will eventually decide the questions presented by the writ. Given that *Mayaja* is on all fours with the instant case, we believe it is in the interests of justice to decide this case now.

Most of the cases that Drexel relies on pre-date the pronouncement of the Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), that "it is far from certain that arbitration proceedings will have any preclusive effect in litigation of nonarbitrable federal claims." 470 U.S. at 221, 105 S.Ct. at 1243, 84 L.Ed.2d at 166. The Court went on to note that federal courts can frame preclusion rules for arbitration proceedings in order to protect federal interests. *Id.* Since preclusion rules can play this role, the Court noted that "neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is *required* in order to assure that a precedent arbitration does not impede a subsequent federal-court [sic] action." 470 U.S. at 223, 105 S.Ct. at 1244, 84 L.Ed.2d at 167 (emphasis in original). The Court concluded by saying "there is no reason to require that district courts decline to compel arbitration, or manipulate the ordering of the resulting bifurcated proceedings, simply to avoid an infringement of federal interests." *Id.* Justice White's concurring opinion takes an even stronger view in this regard. *See* 470 U.S. at 224, 105 S.Ct. at 1244, 84 L.Ed.2d at 168 (White, J., concurring) ("[t]he heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course."). Thus, the Court has recognized that despite the fact that arbitration might be an "inefficient maintenance of separate proceedings in different forums," litigation over nonarbitrable claims can continue even if arbitration proceedings are ongoing. 470 U.S. at 217, 105 S.Ct. at 1240, 84 L.Ed.2d at 163.

■ Drexel's reliance on *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir.1985), as support for its view that the district court should have stayed litigation pending arbitration of the pendent state claims, is misplaced. In *Greenblatt* the court gave collateral estoppel effect to the factual findings of an arbitration award that had already occurred. In doing so, the court was following the Supreme Court's mandate in *Byrd* to fashion

appropriate collateral estoppel rules to protect the federal interests involved. Nothing in *Greenblatt,* however, suggests that the litigation of nonarbitrable issues must be stayed pending the arbitration of pendent state claims; indeed, such a position would run counter to the Supreme Court's statement in *Byrd.* Consequently, we hold that the district court properly refused to stay litigation pending arbitration of the pendent state claims.

## IV.

We AFFIRM the order of the district court denying the defendants' motion to compel arbitration with respect to plaintiffs' 1934 Act claims. We also AFFIRM the order of the district court denying the defendants' motion to stay litigation pending arbitration of the pendent state claims. We REVERSE and REMAND the district court's order with respect to plaintiffs' private RICO claims with instructions to compel arbitration of these claims in accordance with the Federal Arbitration Act and relevant agency regulations.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.