**VALERO REFINING, INC.,**
Plaintiff-Appellant,

v.

**M/T LAUBERHORN (ex Trade Endeavor), etc., et al.,**
Defendants-Appellees.

No. 86–2561
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 27, 1987.

---

Ross, Griggs & Harrison, J. Douglas Sutter, David E. Black, Houston, Tex., for plaintiff-appellant.

Eastham, Watson, Dale & Forney, William A. Durham, Francis J. Gonynor, Houston, Tex., for defendants-appellees.

Before CLARK, Chief Judge,
GARWOOD and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Valero Refining, Inc. (Valero) appeals the judgment of the district court ordering to arbitration its claim under the Racketeer Influenced and Corrupt Organizations Act (RICO) against Trade and Transport, Inc. (Trade). Valero also appeals the district court's denial of its motion for discovery sanctions against Trade. We conclude that the district court properly ordered the RICO claim to arbitration and that we do not have jurisdiction to consider whether the district court abused its discretion in denying sanctions against Trade. Accordingly, we affirm in part and dismiss in part.

## I.

Although the central issue in this appeal involves the arbitrability of Valero's RICO claim, we provide a short description of the events behind this claim. Valero's claim initially arose from a contractual arrangement between it and Trade for the shipment of oil from Oman and Kuwait to Texas aboard the M/T LAUBERHORN. The agreement between the two parties, called a charter party, contained an arbitration clause that stated that "any and all differences and disputes of whatsoever nature arising out of this Charter" would be arbitrated. Valero contends that the captain and four of the crew aboard the M/T LAUBERHORN conspired with Trade, which owned the LAUBERHORN, to steal approximately 9200 barrels of the oil that the ship was hired to deliver to Valero in Texas.

Valero subsequently filed an action against the LAUBERHORN *in rem* and against Trade *in personam.* Valero initially sought to recover damages for the alleged short delivery and contamination of its petroleum. Valero subsequently amended its complaint and asserted that Trade, along with various crew members of the LAUBERHORN, violated the RICO Act, 18 U.S.C. § 1961, *et seq.*

Trade filed a motion to stay the proceedings pending arbitration. On October 31, 1985, the district court granted Trade's motion and ordered arbitration of all of Valero's claims. Valero subsequently filed a motion for reconsideration. On April 12, 1986, the district court granted the motion with respect to the RICO claim because of our decision in *Smokey Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 785 F.2d 1274, *modified on petition for reh'g,* 785 F.2d 1282 (5th Cir.1986). The district court rejected Valero's contention that Trade had waived its right to arbitrate the other claims. It also denied Trade's motion for sanctions against Valero for delaying the naming of an arbitrator persuant to the arbitration clause.

Valero proceeded with discovery on the RICO claim while Trade filed a motion for reconsideration of the court's ruling regarding the non-arbitrability of the RICO claim as well as a motion to quash depositions noticed by Valero. The district court referred these motions to the magistrate who denied both of them. Trade then filed an objection to the ruling of the magistrate and also failed to follow the magistrate's order requiring it to comply with the deposition notices. In response, Valero filed a motion for sanctions as well as for a default judgment.

On June 25, 1986, the district court held a hearing on all the pending motions. At that hearing the court ordered that the entire case would be arbitrated as originally ordered in light of the panel's decision to modify its earlier opinion in *Smokey Greenhaw* "to refuse to decide the arbitrability *vel non* of the plaintiffs' RICO claim." 785 F.2d at 1282. The court also denied Valero's motion for sanctions. The court noted that both parties had "contributed equally to the delayed resolution" of the case and that Trade's failure to comply with the magistrate's order was offset by Valero's resistance to arbitration. The court entered a written order to this effect on July 18, 1986. Valero appeals from the district court's July 18 order.

## II.

Valero contends that (1) the district court erred in granting Trade's motion to compel arbitration of its RICO claim; (2) the parties did not intend to arbitrate a RICO claim; (3) Trade waived its right to arbitrate any dispute between it and Valero; and (4) the district court abused its discretion in denying its motion for sanctions due to Trade's failure to obey the magistrate's order. We examine each contention in turn.

### A.

■ In arguing that the district court erred in granting Trade's motion to compel arbitration of its RICO claim, Valero explicitly requests us to overrule our decision in *Mayaja, Inc. v. Bodkin,* 803 F.2d 157 (5th Cir.1986), *cert. pending,* 55 U.S.L.W. 3523 (1987). In *Mayaja* the court held that Con-

gress did not preclude arbitration of RICO claims. 803 F.2d at 166. Valero argues at great length that *Mayaja* is incorrectly decided. We are foreclosed, however, from considering Valero's argument:

> It is well settled that one panel of this court cannot disregard the precedent set by a prior panel even if it disagrees with the prior panel decision. Absent an overriding Supreme Court decision or a change in the statutory law, only the court sitting *en banc* can do this.

*Girard v. Drexel Burnham Lambert, Inc.,* 805 F.2d 607, 610 (5th Cir.1986).

Valero argues in the alternative that we should distinguish *Mayaja* on the basis that this case involves a "sophisticated conspiracy" whereas *Mayaja* involved a "garden variety fraud." We are unpersuaded by Valero's attempted distinction. We fail to see how the purported criminal conduct at issue in this case is less amenable to arbitration than the securities fraud at issue in *Mayaja*. Valero also attempts to make a distinction based on the purposes of Congress in passing the RICO statute. This is just another method of asking us to reexamine *Mayaja*'s careful analysis of the legislative history of the RICO statute and is a task which we are neither inclined nor have the power to do.[1]

### B.

Apart from arguing that *Mayaja* was incorrectly decided, Valero argues that the arbitration clause between the two parties does not cover a RICO claim. We disagree. As a preliminary matter we note that the contracts before us involve a "maritime transaction" within sections one and two of the Federal Arbitration Act (the Act), 9 U.S.C. § 1 *et seq.*, sufficient to invoke sections three and four of the Act.[2] We now consider whether "the issue involved in [this] suit or proceeding is referable to arbitration under [the charter party]." 9 U.S.C. § 3.

■ We find that the broad language of the arbitration clause encompasses Valero's claims. As we have already noted, the arbitration clause in the charter party states in part that "any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration." Valero's claim alleges that cargo was stolen and that there was a conspiracy to steal the cargo of oil during the voyage of the LAUBERHORN. The RICO claim is based on this wrongdoing. Thus, this dispute is within the ambit of the arbitration clause.

■ Valero also argues that the arbitration clause in the agreement is not enforceable because the charter party document was neither signed nor dated. Thus, Valero contends, there is no evidence that both parties agreed to the terms of the charter party. We disagree. While the Arbitration Act provides that courts can only enforce written agreements to arbitrate, 9 U.S.C. § 3,[3] there is no question

---

**1.** Valero also notes that the Supreme Court has granted certiorari in a Second Circuit case involving the arbitrability of private RICO claims, *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94 (2d Cir.), *cert. granted,* — U.S. —, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986), and urges us to stay this appeal until the Supreme Court has decided *McMahon.* We have rejected this argument once before, *see Girard,* 805 F.2d at 610 n. 3, and, for the same reasons as we stated in *Girard,* do so again today.

**2.** The agreement to transport oil by ship from the Middle East to Texas without question involves a maritime transaction as that term is defined in section one of the Act. Title 9 U.S.C. § 1 states:

> "Maritime transactions," as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage,

supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce," as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

**3.** Title 9 U.S.C. § 3 provides:

that the arbitration agreement is in writing; the charter party was provided to the district court and is in the record. We note also that section three of the Act does not require that a charter party be signed in order to enforce an arbitration agreement contained within it. It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature. *See, e.g., McAllister Bros., Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir.1980); *First Citizens Municipal Corp. v. Pershing Division of Donaldson, Lufkin & Jenrette Securities Corp.*, 546 F.Supp. 884, 887 (N.D.Ga.1982). Ordinary contract principles determine who is bound by a written arbitration agreement. *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir.1960) (lack of signature on charter party does not preclude valid arbitration agreement); *see also A/S Custodia v. Lessin International, Inc.*, 503 F.2d 318, 320 (2d Cir.1974); *Interpool Ltd. v. Through Transport Mutual Insurance Association Ltd.*, 635 F.Supp. 1503, 1505 (S.D.Fla.1985).

■ Throughout the proceedings in the district court, Valero acknowledged the validity of the charter party. Valero's original complaint stated that it entered into a charter party with Trade for the LAUBER-HORN, referred to the arbitration clause, and explicitly stated that it reserved its right to arbitrate its disputes with Trade. In its first amended complaint, Valero also

stated that it had executed the charter party. Finally, counsel for Valero stated in an evidentiary hearing before the district court that no problem existed with regard to the authenticity of the charter party. We therefore conclude that there is sufficient evidence in the record to demonstrate that the parties agreed to the charter party including the arbitration clause.[4]

Valero asserts that the arbitration clause is unenforceable because, at the time the charter party agreement was entered into in May 1985 there was no indication that RICO claims would be arbitrable. Furthermore, Valero asserts that since the charter party stipulates that the laws applicable to New York City will govern the arbitration of disputes between the parties,[5] and since the Second Circuit, of which New York is part, held in *McMahon* that RICO claims are not subject to arbitration, its RICO claims are not subject to arbitration.[6]

■ We disagree with both of Valero's arguments. It is well settled that an appellate court should decide a case based on the law in effect at the time that the case is before the court for review. *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969); *Jarrett v. Resor*, 426 F.2d 213, 217 n. 5 (9th Cir.1970). Valero's argument would "freeze" all legal interpretations at the moment that two parties entered into an agreement. This ap-

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement *in writing* for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
> (emphasis added).

4. We note that Valero is appealing from the July 18, 1986, order of the district court in relation to its arbitration and sanctions ruling and is not appealing the district court's October 31, 1985, order that Valero's claims of fraud in the inducement of an entire contract must be arbitrated. None of the papers filed in the district court in connection with Valero's later motion

for reconsideration mention this latter argument. Valero's brief filed with this court also does not raise any issue regarding the district court's October 31 order. Therefore, we do not consider it.

5. The arbitration agreement states in part:

> Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force.

6. We note that the decision in *McMahon* was limited to agreements involving domestic transactions and that the court implicitly indicated that a different result might be reached in the international context. *McMahon*, 788 F.2d at 98–99. For purposes of this opinion, however, we assume that the Second Circuit would *not* allow a RICO claim like the one in the instant case to be arbitrated.

proach has no basis in existing law, and we decline to adopt it.[7]

■ We also reject Valero's argument that the provision in the arbitration agreement that says the laws of New York City govern the arbitration proceedings requires the district court to apply the rule of the Second Circuit regarding the arbitrability of RICO claims. Our reading of the arbitration agreement convinces us that it does not even address this question. This provision in the arbitration agreement is not a choice-of-law provision as Valero asserts; instead, the provision merely requires that the *procedures* that the arbitrators use be in accordance with the laws applicable to New York City.[8] Accordingly, we find that Valero and Trade intended to submit Valero's RICO claim against Trade to arbitration according to prevailing law.

### C.

■ Valero also contends that Trade has waived its right to arbitration because Trade sought to attach Valero's assets for an alleged breach of the charter party by Valero, and because Trade did not attempt to quash Valero's depositions of the LAUBERHORN's crew members. We disagree. There is no settled rule as to what act or omission constitutes a waiver of an agreement to arbitrate. *Howard Hill, Inc. v. George A. Fuller Co., Inc.,* 473 F.2d 217, 218 (5th Cir.1973). The question of waiver depends on the circumstances of each case and usually must be determined by the trier of facts. *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.,* 436 F.2d 405, 408 (5th Cir.1971). *See also Tenneco Resins, Inc. v. Davy International, AG,* 770 F.2d 416, 420 (5th Cir.1985). We note first that the district court held that Trade had not waived its right to arbitrate. In addition, Valero's argument that Trade waived its right to arbitrate by seeking to attach Valero's assets ignores the fact that section 8[9] of the Arbitration Act preserves the right of maritime attachment without waiving the attaching party's right to arbitration. As the Supreme Court stated in *The ANACONDA v. American Sugar Refining Company,* 322 U.S. 42, 46, 64 S.Ct. 863, 865, 88 L.Ed. 1117 (1944):

> Congress [in section 8 of the Act] plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in Court.

Trade's attempts to obtain prejudgment security were consistent with its rights under the law and did not constitute waiver of its right to have the RICO claim arbitrated. Indeed, Trade sought judicial assistance to *further* the arbitration process when Valero refused to name an arbitrator as was provided for in the charter party.[10]

Valero's argument that Trade waived its right to arbitration by not attempting to

---

7. In *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court acknowledged that *Thorpe* does not apply where manifest injustice would result. We perceive no such threat in this case. The arbitration clause in the charter party was very broad and covered any dispute between Valero and Trade related to the voyage of the LAUBERHORN. Our decision in *Mayaja* did not create any unanticipated obligation on either party in this case because both parties *expected* to arbitrate any dispute between them.

8. Since we find that the arbitration clause is not a choice-of-law provision, we need not address Valero's argument that Trade and it "contracted" to have the Second Circuit's interpretation of the RICO statute control, or the related question of whether such a contractual provision would be valid.

9. Title 9 U.S.C. § 8 provides:

   If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

10. The cases that Valero cites to support his contention that Trade's attempt to attach its assets waives Trade's arbitration rights are distinguishable as all involve non-maritime actions.

quash Valero's depositions is also unpersuasive. Prior to the commencement of the first deposition, Trade's counsel explicitly stated that their appearance did not waive any rights Trade had to arbitration under the charter party. Moreover, as soon as the depositions had been concluded and further discovery was attempted, Trade filed a motion for a protective order because it feared that further discovery would be construed as a waiver of its right to arbitrate. Valero's response stipulated that Trade's participation in discovery would not waive Trade's rights to arbitration.[11]

██ A waiver of an arbitration right will not be lightly inferred without some showing of prejudice. *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968). *See also Tenneco Resins*, 770 F.2d at 421; *E.C. Ernst, Inc. v. Manhattan Construction Company of Texas*, 559 F.2d 268, 269 (5th Cir.1977) (on petition for rehearing) ("[P]rejudice ... is the essence of waiver), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978); *Seguros Banvenez, S.A. v. S/S OLIVER DRESCHER*, 761 F.2d 855, 862 (2d Cir.1985). As the Second Circuit has recognized in a maritime setting, participating in discovery, without more, will not necessarily constitute a waiver. *Dempsey & Associates, Inc. v. S/S SEA STAR*, 461 F.2d 1009, 1018 (2d Cir.1972). In *Tenneco Resins* the court refused to find waiver where only minimal discovery had taken place and where the defendant had clearly stated his desire to arbitrate. 770 F.2d at 421. In light of Valero's stipulation, Trade's actions, and the district court's finding that Trade had not waived its rights to arbitration, we hold that Trade did not substantially invoke the litigation process to such a degree as to prejudice Valero and subsequently waive its arbitration rights.

## D.

██ Finally, Valero contends that the district court abused its discretion in denying its motions for discovery sanctions against Trade. We conclude, however, that we lack jurisdiction to consider this issue because the district court's order denying sanctions is not a final appealable judgment.[12] It is important to recognize that an appeal of the district court's ruling on arbitration is an interlocutory appeal. We have jurisdiction to consider the appeal under 28 U.S.C. § 1292(a)(1). *See Mayaja*, 803 F.2d at 160 n. 3; *Tenneco Resins*, 770 F.2d at 418. The district court, however, has merely stayed the case pending arbitration; it has not yet entered a final judgment in the action nor entered a rule 54(b) judgment with respect to its sanctions ruling. Furthermore, nothing in the language of section 1292(a)(1) gives us jurisdiction to consider the district court's ruling with respect to discovery sanctions before the district court has entered a final judgment. Accordingly, we have no jurisdiction to consider Valero's contention and we dismiss this part of the appeal.[13]

## III.

For the reasons stated above, the order of the district court sending Valero's RICO claim to arbitration is AFFIRMED; Valero's appeal in regard to the district court's denial of its motion for discovery sanctions is DISMISSED.

AFFIRMED IN PART, DISMISSED IN PART.

---

**11.** In its opposition to Trade's motion for a protective order Valero stated that:

Plaintiff hereby stipulates and agrees that Defendant's participation in discovery in this case shall in no event be asserted as a basis for denial of its Motion to Stay Pending Arbitration. The Plaintiff shall not take the position that the participation in discovery in this case constitutes a waiver of Defendant's claimed right to resolve this case by way of arbitration.

**12.** Although neither party raises this issue, we are obliged to raise it *sua sponte* since we are a court of limited jurisdiction. *Huff v. International Longshoremen's Association*, 799 F.2d 1087, 1088 (5th Cir.1986).

**13.** We intimate no view as to whether the district court properly denied Valero's motions for discovery sanctions.