Jerry Lynn YOUNG, Plaintiff-Appellant,

v.

Neal B. BIGGERS, Jr., et al.,
Defendants-Appellees.

No. 86–4132.

United States Court of Appeals,
Fifth Circuit.

May 11, 1987.

Rehearing Granted July 2, 1987.*

Sylvia Y. Robertshaw (Court appointed),
Greenville, Miss., for plaintiff-appellant.

Jerry L. Young, pro se.

Mitchell, McNutt, Bush, LaGrone &
Sams, P.A., John S. Hill, Tupelo, Miss., for
Crider & Jones.

John B. Farese, Ashland, Miss., pro se.

James Patrick Caldwell, Frank A. Riley,
Riley, Weir & Caldwell, Tupelo, Miss., for
Collins & Hoar.

Donald G. Barlow, Asst. Atty. Gen., Ed-
win L. Pittman, Atty. Gen., Jackson, Miss.,
for Funderburk, Grey & Herring.

Edward Lancaster, Houston, Miss., for
Fox.

Before THORNBERRY, GEE, and
REAVLEY, Circuit Judges.

GEE, Circuit Judge:

Jerry Young appeals the district court's
dismissal of his 42 U.S.C. § 1983 lawsuit.
We affirm, bound by a previous panel's
holding that Mississippi's one-year statute
of limitations applies retroactively to suits
of this type.

Appellant Young's present action ends a
series of legal battles, in both federal and
state fora, which resulted from the appel-
lant's armed robbery of the (Elvis) Presley
Heights branch of the Bank of Mississippi
in Tupelo, Mississippi. A state court con-
victed Young of armed robbery in 1980 and
sentenced him to 30 years in prison. The
Mississippi Supreme Court affirmed his
conviction in September 1982. *Young v.
State*, 420 So.2d 1055 (Miss.1982). After
that ruling, Young sought federal habeas
relief. Although he succeeded at the dis-
trict court level, on appeal, we denied habe-
as relief. *Young v. Herring*, 777 F.2d 198
(5th Cir.1985). He filed the present action
in June 1985.[1]

The events surrounding the bank rob-
bery provide the basis for Young's allega-
tions of § 1983 liability. In connection
with the bank robbery, the police recovered

---

* See 820 F.2d 727.

---

1. Young had previously filed a § 1983 action in
federal court in 1982. The district court viewed
the suit as a habeas petition and dismissed it
without prejudice because Young had not yet
exhausted his state court remedies.

$5,240 from Young's mother-in-law's house. Young claimed that it was his money. He assigned his interest in the money to two lawyers, who filed an action for replevin in state court in 1982. The state court determined that the money belonged to the bank. Young alleges a grand conspiracy to deprive him of his liberty (circumstances leading to his present incarceration) and his property (circumstances surrounding the deprivation of his $5,300).[2] He names just about everybody he can as part of this conspiracy: his lawyer, the judge, the prosecutor, and a juror at his criminal trial; two members of the Tupelo police and a county sheriff; bank personnel; and the judge in the state court replevin matter.

The district court held that the statute of limitations barred Young's suit. *Young v. Biggers*, 630 F.Supp. 590 (N.D.Miss.1986). The law is now clear that the one-year statute of limitations of Miss.Code Ann. § 15-1-35 applies to all § 1983 actions brought in Mississippi. *Gates v. Spinks*, 771 F.2d 916 (5th Cir.1985), *cert denied*, —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986). *Gates* followed the Supreme Court's direction, voiced in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), to select a statute of limitations that governs personal injury actions for all § 1983 suits. For suits brought in Mississippi, we chose the one-year statute for most common-law intentional torts rather than the six-year catch-all statute.

The only question then, is whether to apply *Gates* retroactively to Young's claim. Young contends that at the time he filed his suit Mississippi's six-year statute applied to suits against law enforcement officials. He styles his action as such a suit and asserts therefore that it would be unfair to apply *Gates* retroactively to his suit. The district court analyzed this question within the framework provided by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and decided to apply *Gates* retroactively. Although we disagree with the dis-

trict court's analysis of the *Chevron* factors, we affirm its decision on other grounds. *See Bickford v. International Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir.1981).

A week before the district court issued its decision in this case, a panel of this circuit applied *Gates* retroactively in a case involving a § 1983 suit against state law enforcement officials. *Shelby v. McAdory*, 781 F.2d 1053, 1054 (5th Cir.1986). *Shelby* is indistinguishable from this case. We cannot overrule another panel absent an overriding Supreme Court decision or a change in statutory law. *Girard v. Drexel Burnham Lambert, Inc.*, 805 F.2d 607, 610 (5th Cir.1986). Accordingly, this action was time-barred one year from the date when Young knew or had reason to know of the injury that is the basis of the action. The state court convicted Young in December 1980. His arrest and the confiscation of the money took place before then. Young had one year from that date to file a § 1983 action. This complaint was filed in June 1985. Therefore it is untimely.

AFFIRMED.

REAVLEY, Circuit Judge, specially concurring:

I agree that this panel is bound by the holding in *Shelby v. McAdory*, 781 F.2d 1053 (5th Cir.1986). However, the *Shelby* panel failed to conduct the requisite analysis when it applied *Gates v. Spinks*, 771 F.2d 916 (5th Cir.1985), retroactively. If the *Shelby* panel *had* considered the relevant test, described in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), it would have reached a different result. The district court concluded otherwise, holding that *Gates* should retroactively bar Young's section 1983 claim. My colleagues state that they "disagree with the district court's analysis of the *Chevron* factors," but affirm the dismissal, on the basis of *Shelby*, without elaborating their disagreement. I write

**2.** Young uses the figure of $5,300 in his complaint which we take as a rounded figure of the $5,240 recovered by the bank. At oral argu-

ment, Young's appointed counsel admitted the two figures represented the same money.

separately to explain my disagreement with the district court's *Chevron* analysis.

Although the general common law rule is that judicial decisions are given retroactive effect, *Solem v. Stumes,* 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984), equitable considerations sometimes mandate exceptions to this rule. In *Chevron Oil Co. v. Huson,* the Supreme Court enunciated three factors that courts should examine when determining such exceptions in civil cases:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–107, 92 S.Ct. at 355 (citations omitted).

The first *Chevron* factor requires us to consider whether *Gates* established a new principle of law or overruled clear past precedent. The district court observed that "[a]lthough in 1980 there was no authority in the circuit that [the one-year] limitations period would definitely have applied to Young's § 1983 action, neither was there contrary authority." In reaching this conclusion, the lower court distinguished *Shaw v. McCorkle,* 537 F.2d 1289 (5th Cir.1976), in which we applied Mississippi's six-year limitations period, finding that *Shaw* was a contract action while Young's action sounds in tort. The district court concluded as follows:

> It is more likely than not that even pre-*Wilson* [*v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) *see supra* slip opinion at 217], and pre-*Gates,* under the principle of applying the limitations period of the most closely analogous state claim, the one-year limitations period for common-law intentional torts would have been held to be controlling in Young's case. Thus, Young was on notice in 1980 that it would not have been reasonable to wait more than one year to file his suit.

Yet the *Shaw* court itself expressly rejected the distinction drawn by the district court. In *Shaw,* the plaintiff complained of certain intentional torts committed by four Mississippi highway patrolmen. The plaintiff also alleged that the patrolmen's actions constituted a breach of a performance bond indemnifying the faithful performance of the official duties of the defendants. The *Shaw* court ultimately relied on the surety contract when it applied Mississippi's six-year limitations period; but in so doing, the court expressly noted that "even if the surety were not made a party defendant ... the general six-year limitation period might still apply," because the "action would not actually have been for an intentional tort but rather for breach of the patrolmen's official duties, the intentional tort being only the particular breach thereof." 537 F.2d at 1294 n. 11. Thus it appears that the law in 1980 was, at least, unsettled, and, more probably supportive of the six-year limitations period for intentional torts committed by police.

Indeed, several events following the time the limitations period began to run in this case—1980—buttress this conclusion. When the magistrate dismissed Young's 1982 complaint without prejudice, *supra* at 216 n. 1, he found that the dismissal would not "likely subject a subsequent § 1983 action by plaintiff against defendants to a statute of limitations defense." The magistrate explained as follows:

> Here there is no realistic possibility of such an occurrence, since Mississippi's catch-all six-year statute of limitations, Miss.Code Ann. § 15–1–49, applies to plaintiff's 1983 claim.... See *Shaw v. McCorkle,* 537 F.2d 1289 (5th Cir.1976).

In addition, in 1982, the dicta of *Shaw* became our holding in *Morrell v. City of Picayune*, 690 F.2d 469, 470 (5th Cir.1982), where we stated that "the one-year statute governing actions for intentional torts by ordinary citizens does not apply to torts by police." Finally, none of the defendants, with several lawyers and a federal judge among them, raised the limitations issue in their answers to Young's 1982 complaint. Apparently no one at this time anticipated *Gates*, and in fact the general understanding was that a six-year limitations period applies to intentional torts committed by police. "We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights." *Griffin v. Illinois*, 351 U.S. 12, 26, 76 S.Ct. 585, 594, 100 L.Ed. 891 (1956) (Frankfurter, J., concurring), *quoted in Chevron*, 404 U.S. at 107, 92 S.Ct. at 356.

The second *Chevron* factor concerns whether the purposes underlying *Wilson* and *Gates* will be furthered or retarded by retroactive application of the new rule. By directing federal courts to select a single statute of limitations period to govern all section 1983 suits arising in a particular state, the *Wilson* Court intended to further the interests of uniformity and certainty, as well as to minimize unnecessary litigation. 105 S.Ct. at 1947. In regard to retroactive application, however, these interests have little import. As the Third Circuit observed, "[a]lthough we cannot say that the policies referred to in *Wilson v. Garcia* militate clearly in favor of retrospective application, neither do they militate against such application." *Smith v. City of Pittsburgh*, 764 F.2d 188, 196 (3d Cir.1985); *accord Gibson v. United States*, 781 F.2d 1334, 1339 (9th Cir.1986).

The final *Chevron* factor calls for us to consider whether retroactive application of *Gates* will lead to harsh or inequitable results. For the most part, this issue depends on our resolution of the first *Chevron* factor. "It would ... produce the most 'substantial inequitable results,' to hold that the [plaintiff] 'slept on his rights' at a time when he could not have known

the time limitation that the law imposed upon him." *Chevron*, 404 U.S. at 108, 92 S.Ct. at 356 (*quoting Cipriano v. City of Houma*, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969)). In view of the fact that Young filed this suit *pro se*, at a time when no one else, including this court (*see Morrell, supra*) could have anticipated *Gates*, it hardly seems fair to say that Young "slept on his rights." The unfairness of such a conclusion was summed up best by Young himself:

Appellant has probably spent more time studying law in the past six years than many attorneys spend studying in law school and he has done this primarily for one reason—back in 1980 he told [the defendants] that he would get his money back. It did not take Appellant long to realize that to achieve this goal, he would have to learn how to use the law and the courts. He soon found out that this type of litigation is much like a game with set rules and procedures that must be followed. Appellant learned the rules and thought he could rely on them. He has tried to play by the rules in everything he did. Under such circumstances nothing could be more unfair than for this Court to allow the rules on which Appellant depended to be changed in the middle of the game.

In its *per curiam* opinion, the *Shelby* court did not cite *Chevron*, nor allude to the three factors enunciated there. Because I believe application of the *Chevron* analysis clearly demonstrates the inequity of applying *Gates* retroactively to bar Young's section 1983 suit, I believe *Shelby* reached the wrong result and should be overruled.