IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-60329
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLAIBORNE WILLIAMS, also known as "C-Wayne",

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:95-CR-122-1-S
--------------------
May 23, 2001

Before DAVIS, JONES and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Claiborne Williams (Williams) has appealed his convictions and sentence for having conspired with his wife, Katrina Brown Williams (Brown) and others, to launder the proceeds of crack cocaine distribution, and for having possessed crack cocaine with intent to distribute it.  We AFFIRM.

Williams pleaded guilty pursuant to a written agreement whereunder other counts of the indictment against him were dismissed.  In the agreement, he acknowledged that the substance which he had possessed contained "cocaine base (crack cocaine)."

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Williams now contends that the district court reversibly erred by applying the sentencing guidelines for crack cocaine to determine his sentence. He argues that at most, the Government's evidence established that he possessed "cocaine base," not "crack cocaine." Williams's contention is reviewable only for plain error, because he raises it for the first time on appeal. See United States v. Brooks, 166 F.3d 723, 725 (5th Cir. 1999); United States v. Brewster, 137 F.3d 853, 856 (5th Cir. 1998).

In Brewster, this court held that the district court did not plainly err by sentencing the defendant under the cocaine base (crack) guidelines, because "[t]he record shows that Brewster was aware that he was charged with, was pleading guilty to, and was sentenced for possession with intent to distribute cocaine base ('crack')," and that he "fully understood that the enhanced crack cocaine guideline applied to his case." 137 F.3d at 857; accord Brooks, 166 F.3d at 725. Since the same is true of Williams's case, the district court did not commit plain error by sentencing him under the guidelines applicable to crack cocaine.

Williams contends that the evidence was insufficient to establish by a preponderance that he obstructed justice relative to the offenses of which he was convicted, so that the district court erred by increasing his offense level by two levels on authority of U.S.S.G. § 3C1.1.

At a hearing on whether Williams's pretrial release should be revoked, the Government's principal witness testified that he had been unable to appear at a previous hearing because he had been kidnapped and detained by Williams's father-in law, Brown's

father.   The witness testified that he was ultimately released at the direction of Williams.   The witness's testimony and other reliable evidence indicated that he was kidnapped in order to prevent him from testifying against Williams.   Accordingly, the district court did not clearly err by enhancing Williams's sentence for obstruction of justice.   See United States v. West, 58 F.3d at 133, 138 (5th Cir. 1995); United States v. Pofahl, 990 F.2d 1456, 1481 (5th Cir. 1993) (defendant wrote a letter asking her husband not to provide evidence against her); United States v. Mejia-Orosco, 867 F.2d 216, 218 (5th Cir. 1989).

Williams asserts that the Government violated the plea agreement by failing to advise the trial court of the nature and extent of his cooperation.   He complains that the prosecutor failed to get a report from a DEA agent who recently had interviewed Williams, and to tell the court what transpired. Williams also asserts that the Government did not give him an adequate opportunity to cooperate.

The prosecutor told the court that Williams had helped the Government by urging his wife to cooperate, which she did.   The prosecutor also told the court that Williams's speaking with the DEA agent was an encouraging sign that he had begun to cooperate. The defense did not assert in the district court that the Government failed to comply fully with the plea agreement, so Williams is not entitled to relief on that ground unless there was plain error.   See Brooks, 166 F.3d at 725.

Williams argues that he was prejudiced by the "failure to comply with the plea agreement," but he does not assert that he

actually told the DEA agent anything that would have constituted "cooperation," or even what cooperation he may have provided if he had been afforded more opportunities. He is not entitled to relief on this point because he has not shown that there "was clear and obvious [error] that affected [his] substantial rights." Brooks, 166 F.3d at 725.

Williams contends that the Government breached the plea agreement by failing to evaluate his cooperation in order to determine whether to exercise its discretion to move for a substantial-assistance departure. Williams asserts that the Government induced his guilty plea by an implicit agreement to at least interview him and to evaluate his cooperation to determine whether to exercise its discretion to file for a downward departure under U.S.S.G. 5K1.1. Williams makes this contention for the first time on appeal also, so he is not entitled to relief unless there was plain error. See Brooks, 166 F.3d at 725; United States v. Palomo, 998 F.3d 253, 256 (5th Cir. 1993).

The Government was not obligated to interview Williams further, because the plea agreement provides that the decision whether to move for a downward departure was within the Government's sole discretion. See United States v. Price, 95 F.3d 364, 369 (5th Cir. 1996). Nor was the Government obligated to seek additional information from Williams. See United States v. Garcia-Bonilla, 11 F.3d 45, 47 (5th Cir. 1993).

Williams attempts to distinguish Price and Garcia-Bonilla on their facts. However, the facts in Price and Garcia-Bonilla actually favor those appellants more than the facts favor

Williams. The reason is that the former two appellants preserved their right of appeal by raising the point in the district court. See Price, 95 F.3d at 367, and Garcia-Bonilla, 11 F.3d at 46. Because Williams failed to do so, he is relegated to the plain-error remedy, which he also fails to argue for.

Williams contends that his conviction of conspiracy to launder money must be set aside because Count One fails to charge that offense. Specifically, he asserts that it fails to state an essential element, that there was a nexus between the alleged money-laundering conspiracy and interstate commerce.

The failure of an indictment to allege an essential element of the offense charged is a jurisdictional defect which is not waived by the failure, as in Williams's case, to raise it in the district court. United States v. Williams, 203 F.2d 572, 573-74 (5th Cir. 1953). However, if the point is raised for the first time on appeal, an indictment will be held "sufficient, unless it is so defective that by any reasonable construction, it fails to charge an offense for which the defendant is convicted." United States v. Alford, 999 F.2d 818, 823 (5th Cir. 1993) (citation and quotation marks omitted).

In United States v. Green, 964 F.2d 365, 374-75 (5th Cir 1992), this court held that a money-laundering indictment which did not specifically mention interstate commerce but alleged the involvement of banks was sufficient, because an effect on interstate commerce is incidental to the banking industry. 964 F.2d at 374-75. The Eighth Circuit has held similarly relative to an indictment which alleged the construction of a shopping

mall. United States v. Lucas, 932 F.2d 1210, 1219 (8th Cir. 1991) ("an effect upon interstate commerce is an inevitable incident of the construction of a shopping mall"), cited in Green, 964 F.2d at 374.

Williams's indictment refers to the relevant subsections of the statute, § 1956(a)(1) and (h), and states the time and place of each of the alleged overt acts. The overt acts describe the laundering of drugs proceeds through Brown's purchase of cars and expenditures for bail bonds, automobile repairs, rental cars, and repairs to rental cars, as Williams's nominee. According to the overt-act allegations, the car purchases not only involved cash expenditures, but also financing, obtaining insurance, and the registration and titling of vehicles in Brown's name.

This court has held that the purchasing of two automobiles to launder cocaine-trafficking proceeds and for use in the drug-trafficking conspiracy established the interstate-commerce element of a money-laundering charge. United States v. Westbrook, 119 F.3d 1176, 1191-92 (5th Cir. 1997). The court observed that United States v. Gallo, 927 F.2d 815 (5th Cir. 1991), held that "Congress has generally made clear in 21 U.S.C. § 801 that drug trafficking affects interstate commerce." 119 F.3d at 1192. The Westbrook court stated further that there was much evidence at Westbrook's trial "that all cocaine distributed in the United States is manufactured outside the country." Id.

In the instant case, the overt-act allegations of the indictment, described ante, particularly the purchase of the vehicles in order to launder cocaine-trafficking proceeds, were

sufficient to reasonably constitute allegations of an effect on interstate commerce.  See Westbrook, 119 F.3d at 1191-92; Gallo, 927 F.2d at 822-23.  Therefore, Count One sufficiently alleged that Williams had participated in a conspiracy to launder money in violation of § 1956(a)(1) and (h).  See Green, 964 F.2d at 374-75.

Williams contends that the guidelines which authorized the enhancement of his sentence for possession of 241 grams of crack, for obstructing justice, and for his role in the offense, without those facts being charged in the indictment or found beyond a reasonable doubt, are unconstitutional.  He relies on Apprendi v. New Jersey, 530 U.S. 466 (2000).  The lack of merit of this contention is shown by United States v. Salazar-Flores, 238 F.3d 672 (5th Cir. 2001).

Williams argues that he is entitled to relief on the ground that the Salazar-Flores decision conflicts with the opinions of five of the Justices who decided Apprendi.  This argument lacks merit because "one panel of this court cannot disregard the precedent set by a prior panel even if it disagrees with the prior panel decision.  Absent an overriding Supreme Court decision or a change in the statutory law, only the court sitting en banc can do this."  Girard v. Drexel Burnham Lambert, Inc., 805 F.2d 607, 610 (5th Cir. 1986).

The judgment of the district court is due to be, and it is hereby AFFIRMED.