**THE CONCRETE COMPANY, INC., Plaintiff/Counterdefendant,**

v.

**MMC HOLDINGS, INC., Defendant/Counterplaintiff.**

**No. CIV.A. 01–D–54–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 30, 2001.

Robin Garrett Laurie, Balch & Bingham, Montgomery, for the Concrete Company, Inc., plaintiffs.

Richard M. Jordan, Randy A. Myers, Jordan, Myers & Locklar, P.C., Montgomery, for MMC Holdings, Inc., defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is a Motion To Stay, Pending Appeal filed by MMC Holdings, Inc., ("MMC") on September 10, 2001. The Concrete Company, Inc., ("TCC") filed an Objection to said Motion on October 9, 2001. MMC filed a Response to TCC's Objection on October 30, to which TCC subsequently filed a Response on November 6, 2001. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that MMC's Motion is due to be granted.

## DISCUSSION

When business competitors join together for strategic purposes, they would be wise to structure their arrangements with an eye toward minimizing the inevitable friction which the future might bring. Absent mechanisms to turn to when bad blood grows invective, irreconcilable business disputes quickly transgress into legal quagmires. The subsequent fallout seeks in vain for a remedy, turning eventually to the courts to alleviate the impasse. Such a situation has brought the present matter before the court.

Earlier this year, the court was called upon to interpret a buy/sell provision of a business agreement which was the focal point of a limited liability company created by the parties, two gravel-mining corporations of diverse citizenship. According to the provision in question, one party could name a price for the other's interest in the company, leaving the other to elect either to sell its share or to buy that of the activating member at the named price. The provision bordered on the impracticable given that one of the key assets of the company was a contingency; it remained with the company only so long as MMC's president was the company's manager.[1]

---

1. The company acquired a lease to mine on the property owned by Anderson Farms, L.L.C. However, the lease contained a provision which allowed Anderson to terminate the lease in the event that Harry Lambert, MMC's sole shareholder, no longer managed the joint venture. When TCC activated the buy/sell provision, the named price took into consideration the contingency surrounding this valuable lease.

When the buy/sell provision was activated, however, the parties disputed neither its applicability, nor their desire to be bound thereto; they merely asked the court to interpret the provision's scope. Having done so, the court is now being asked to stay its judgment until the Eleventh Circuit can determine the validity of said interpretation.

The governing standard in determining whether or not a stay is appropriate is provided by Rule 62(d) of the Federal Rules of Civil Procedure, and the cases interpreting that rule.[2] The Eleventh Circuit has held that, in determining whether or not to stay a non-money judgment, the court is to consider the following: (1) whether the stay applicant has shown a likelihood of success on his appeal; (2) whether the applicant might suffer irreparable harm absent a stay; (3) whether the issuance of a stay will substantially injure the party seeking enforcement of the judgment; and (4) where the public interest lies. *Venus Lines v. CVG Indus. Venezolana De Aluminio,* 210 F.3d 1309, 1313 (11th Cir.2000).

█ As to the first factor, TCC argues that MMC's arguments on appeal are likely to be no more persuasive than they have been thus far. The court does not suspect that its own synthesis of MMC's arguments were in any way deficient, but were a court's confidence in its conclusions determinative in the present analysis, a judgment might never be stayed pending appeal. *Cf. Combustion Sys. Servs., Inc. v. Schuylkill Energy Resources, Inc.,* 153 F.R.D. 73, 74 (E.D.Pa.1994) ("[A]lthough the Court will not concede that it committed error, this Court cannot conclude that Plaintiff has no reasonable possibility of success on the merits of its . . . appeals.").

More pertinent to this analysis should be the novelty of the issue presented for appeal, and the nature of the judgment itself. The court granted summary judgment on an issue of contract interpretation which was not ambiguous, but no case law was presented to the court involving even an analogous buy/sell provision, so the court cannot rest on the strength of precedent. Moreover, the court's judgment arose from cross-motions for summary judgment, so even though the Eleventh Circuit might not entirely disagree with the reasoning, it could very well conclude that the facts nonetheless raise jury questions. This is not a typical case involving an award of damages upon a finding of liability; the court's ruling determined the ownership of a company. Were this judgment to be enforced forthwith, a reversal upon appeal might very well lead to logistical nightmares in re-establishing ownership and control of the company. This concern is especially weighty given the clear sense conveyed by the parties' briefs that their conflicts are irreconcilable.

Of course, TCC insists that these very conflicts necessitate a prompt change of ownership lest the discord harm the company's well-being. The court will not rehash the numerous examples of alleged mismanagement that TCC has proffered in support of this conclusion. Nor does it see any reason to draw out MMC's lengthy attempts to contextualize and euphemize such actions. Despite the rhetoric concerning MMC's "outright hostility", (Reply at 22) and the accusations that TCC is

---

2. Rule 62(d) states:

    *(d) Stay Upon Appeal.* When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of the rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Fed.R.Civ.P. 62(d).

intending to "gain control of the local market so as to manipulate increases in prices that ultimately fall on the consumer," (Resp. at 20) the court is persuaded that the present rift between the parties is little more than what it always has been: "TCC and MMC disagree strongly on mining strategies and the raising of capital." (Reply at 22.) Aside from a difference of opinion on the proper business judgments to be made, the court is not persuaded that permitting the rift to subsist during the pendency of the appeal poses a risk of "substantial injury" to TCC.

On the other hand, nor is there any indication that refusal to stay the judgment necessarily will inflict irreparable harm upon MMC. Certainly MMC's sole shareholder Harry Lambert will be hindered by a non-compete agreement, and the Anderson Lease, the company's most valuable asset, will be lost. Still, the receipt of $500,000 in exchange for such losses does not seem of the type contemplated by the present analysis. Moreover, these are the inevitable consequences resulting from a final judgment; they happened merely because the court interpreted the parties' contract.

Nonetheless, the purpose of a stay in these instances is "to preserve the status quo." *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir.1979).[3] Ten months have passed since the lawsuit was first filed, and in spite of the exacerbation of tensions between the parties, their joint venture is still operating at a profit. Certainly there have been disagreements as to the specifics of the business, but none of these contentious points suggest a risk

that the company will be depleted of value, let alone that either party intends as much. The briefs before the court indicate that each party wants control over the entire company, and they both believe that the Eleventh Circuit will grant their respective wish. Accordingly, the court downplays any concern that MMC's continued involvement will be of detriment to the company.[4] On the other hand, were the judgment to be enforced and then reversed on appeal, the difficulties involved in reinstating an ousted business partner promise to be substantial.

While not an overwhelming factor, the public interest favors the court's granting of a stay of the present action. The employees and the customers of the company are best served by interactions with a company with stable management control. While there is no gauge by which to determine the likelihood that the court's judgment will be reversed, the mere possibility that it will counsels in favor of a stay given the disruption that might otherwise ensue. Accordingly, the court finds that a stay of its judgment is appropriate.

TCC asks that the court condition this stay upon MMC's posting of a supersedeas bond of $1,000,000. The court sees no reason to do this. Generally such bonds are provided as security in a money judgment when there is a concern that the prevailing party will not be paid otherwise. *See N. Indiana Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 281 (7th Cir.1986). There is no such concern here. The judgment requires *TCC* to pay *MMC*, with MMC giving up its share in the company; should the court of appeals affirm,

---

**3.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**4.** Even if Lambert's actions reach the point where TCC has a legitimate complaint about either his abuse of authority or simply gross mismanagement, TCC's demonstrative affinity for litigation provides it recourse for such actions.

TCC will be able to enforce its judgment in whole. TCC insists that MMC's decision-making influences will effectively lead to the company being a different entity than that it allegedly purchased ten months ago. While the court considers this to be an exaggeration, it must point out that, when TCC elected to litigate rather than negotiate with MMC, it bore the risk that the administration of justice is often a time-consuming process. Lambert is bound by a fiduciary duty to the company. This combined with his present stake in the company convince the court that, should TCC eventually enforce its judgment, it will be adequately safeguarded. As such, the court sees no reason to require MMC to post a supersedeas bond. *See Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir.1988) (listing circumstances in which bond requirement may be waived in court's discretion).

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that MMC's Motion For Stay be and the same is hereby GRANTED.